UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 08 - 23032

CIV-HOEVELER

SHARON E ANGULO,

    Plaintiff,

vs.

COUNTRYWIDE FINANCIAL
CORPORATION, et al.,

    Defendants.

_____/



FILED by_____ D.C.

OCT 3 0 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

MAGISTRATE JUDGE
GARBER

## NOTICE OF REMOVAL

### I. INTRODUCTION

Defendants Deutsche Bank National Trust Company on behalf of GS Mortgage Securities Corp., GSAA Home Equity Trust 2005-10 asset backed certificates series 2005-10, Dr. Josef Ackerman, Dr. Hugo Banzinger, Anthony Diiorio, Stefan Krause, Herman-Joset Lamberti, Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB,[1] David Sambol, Eric P. Sieracki, Angelo R. Mozilo, and S. Dean Lesiak (collectively **Defendants**) remove the action pending in the Circuit Court in and for the Eleventh Judicial Circuit, Miami-Dade County, Florida, under case number 08-57969-CA-01. The Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida, is within the Southern District of Florida and within this division.

---

[1] Countrywide Financial Corporation, Countrywide Home Loans, Inc and Countrywide Bank, FSB are sued herein as "Countrywide Financial Corporate Headquarters a/k/a Countrywide Mortgage Services a/k/a Countrywide Home Loans, Countrywide Bank, FSB a/k/a America's Wholesale Lender." To the extent that plaintiff has purported to name as a defendant any other Countrywide entities, those entities join in this notice.

{M2743978;1}

Removal is based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b). Federal questions arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*. (**RICO**), and the Civil Rights Act of 1871 (**Civil Rights Act**), 42 U.S.C §§ 1983, 1985 and 1986.[2]

## II. PROCEDURAL COMPLIANCE

This notice of removal is timely pursuant to 28 U.S.C. § 1446(b). Plaintiff filed this action in the state court on September 29, 2008. Defendants received Plaintiff's summons and initial pleading on or after October 15, 2008.

Copies of the process, pleadings, orders, and other papers or exhibits on file with the state court are attached as **COMPOSITE EXHIBIT A** in compliance with 28 U.S.C. § 1446(a).[3]

Contemporaneous with the filing of this notice of removal, the undersigned served a Notice of Filing of Notice of Removal upon plaintiff as is required by 28 U.S.C. § 1446(d). A copy of that notice (without exhibits) is attached as **EXHIBIT B**. The original of that notice, with exhibits, is being filed with the Clerk of the Circuit Court for Miami-Dade County, Florida, in accordance with 28 U.S.C. § 1446(d).

The defendants named in the caption of the complaint in this action have not been served. The pleadings and papers on file in the Miami-Dade County Circuit Court show that no service returns have been filed with respect to the defendants, and there is no other indication that any of those defendants have been served. (*See, generally,* COMPOSITE EX. A.) While the "rule of unanimity" generally requires that all defendants consent to removal of a case to federal court,

---

[2] This Court also has jurisdiction of plaintiff's claims under the Civil Rights Act pursuant to 28 U.S.C. § 1343(a)(1), (2) and (3).

[3] Included in the court file was a civil cover sheet and complaint for *Malick v. Bayview Center*, 08-57979-CA-31. In light of the fact that this case number is only one digit away from the *Angulo* action, the *Malick* documents were likely placed in this court file inadvertently. However, for completeness, we include these papers because they are currently in the state court file.

*see Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001), a recognized exception to the rule is that defendants not yet served with process need not join in removal. *See White v. Bombardier Corporation*, 313 F. Supp. 2d 1295, 1299-1300 (N.D. Fla. 2004) (consent of defendant not required where it had not been served at time of removal); *see also Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999); *McKinney v. Board of Trustees*, 955 F. 2d 924, 925 (4th Cir. 1992). Thus, at this time, Defendants may remove this case without seeking the consent of any other party.

All defendants named in this action are represented by the same law firm — Akerman Senterfitt — and consent to a join in this removal. As counsel for Countrywide, Deutsche Bank, and all individuals named in this lawsuit, we are authorized to execute this notice of removal on their behalf.

As 28 U.S.C. § 1446(a) requires, the grounds for removal are set forth below.

### III. SUMMARY OF THE GROUNDS FOR REMOVAL

Removal is grounded upon federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b). Federal questions are raised by plaintiff's allegations that defendants committed violations of RICO and of the Civil Rights Act.

The complaint, filed by plaintiff *pro se*, is largely incomprehensible; however, the federal nature of the claims plaintiff has attempted to allege is clear. Specifically, plaintiff alleges that defendants violated RICO because they "established a 'pattern of racketeering activity' by using the U.S. Mail more than twice to collect an unlawful debt." (Compl., at 13.) In support of her RICO allegations, plaintiff expressly cites 18 U.S.C. §§ 1341 and 1343, the federal mail fraud and wire fraud statutes. (*Id.*) Plaintiff also contends that she is entitled to relief under the Civil

Rights Act. She alleges in the complaint that defendants "deprive[d] him of property" in violation of 42 U.S.C. § 1983, conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985 or failed to prevent such interference in violation of 42 U.S.C. § 1986. (*Id.*)

Under 28 U.S.C. § 1331, the district courts of the United States have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States and as such have original jurisdiction over this action. Whether a claim arises under federal law so as to confer federal question jurisdiction under section 1331 is governed by the well-pleaded complaint rule. Under this doctrine, "federal jurisdiction exists . . . when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

In this instance, plaintiff expressly asserts claims for relief under RICO and the Civil Rights Act. Claims alleging RICO violations are removable based upon federal question jurisdiction. *See, e.g., Penn West Assoc., Inc.* v. *Cohen,* 371 F.3d 118, 123 (3d Cir. 2004) (removal of RICO claim properly based on federal question jurisdiction); *Bahari* v. *Countrywide Home Loans,* 2005 WL 3505604, at *2 (D. Md. Dec. 16, 2005) (denying motion to remand because RICO claims "involve the determination of substantial questions of federal law"). Similarly, plaintiff's claims under the Civil Rights Act present federal questions and are removable. *See, e.g., Rectory Park, L.C.* v. *City of Delray Beach,* 208 F. Supp. 2d 1320, 1325 (S.D. Fla. 2002) (removal of claims made under Section 1983 was proper); *Baldwin Hills Med. Group* v. *Los Angeles Co. Metropolitan Transp.,* 196 Fed. Appx. 567, 569 (9th Cir. 2006) (complaint alleging violations of sections 1983 and 1985 vested district court with federal question jurisdiction); *Williams* v. *Ragnone,* 147 F.3d 700, 702-03 (8th Cir. 1998) ("section 1983 claims brought in state court are removable pursuant to section 1441(a)"); *Nielson* v. *Soltis,* 41

4

F.3d 1516 (table), unpublished disposition, text at 1994 WL 589460, at *5 (10th Cir. 1994) ("it is clear the Defendants were entitled to remove this case to federal court, as the Plaintiff alleged federal claims under §§ 1983, 1985 and 1986 of the Civil Rights Act").

Plaintiff's complaint also appears to set forth state law claims for fraud, misrepresentation, breach of contract and rescission. These are supplemental claims that are properly within this Court's jurisdiction under 28 U.S.C. § 1367(a). Plaintiff's complaint shows these claims are inextricably intertwined with and form part of the same case or controversy as her RICO and Civil Rights Act claims, and the Court has supplemental jurisdiction over the state law claims under section 1367(a). *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (district court may exercise supplemental jurisdiction over state law claims that constitute "part of the same case or controversy" as claims arising under federal law); *Design Pallets, Inc.* v. *Gray Robinson, P.A.*, 2008 WL 4534256, at *1 (M.D. Fla. Oct. 7, 2008) (district court had supplemental jurisdiction over state law claims where there was subject-matter jurisdiction over federal RICO claims).

## IV. CONCLUSION

Removal is proper because this matter falls within this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1441(b). This Court has federal question jurisdiction because plaintiff's RICO and Civil Rights Act claims are clear from the face of the complaint. Defendants have met all procedural requisites for removal, and this notice is timely filed. Defendants respectfully requests the Court take jurisdiction over this matter and conduct all further proceedings in this case.

Respectfully submitted,

for Jeffrey A. Trinz

5

Florida Bar No. 0265683
E-Mail: jeffrey.trinz@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue  25th Floor
Miami, Florida 33131-1714
305-374-5600 (ph)/305-374-5095 (fax)

and

William P. Heller
Florida Bar No. 987263
e-mail:  william.heller@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-759-8945(ph)/954-463-2224 (fax)

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished, by First Class U.S. Mail, to: Sharon E. Angulo, 20304 SW 82nd Place, Miami FL 33189 on this 30th day of October, 2008.

_____
for   Jeffrey A. Trinz, Esq.

6

This space is for recording purposes only

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

### GENERAL JURISDICTION DIVISION
### COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA
Case # 08-57969 CA 01 (09)

| | |
|---|---|
| SHARON E ANGULO | ) |
|    Plaintiff | ) |
| VS. | ) |
| **DEUTSCHE BANK NATIONAL** Trust Company On behalf | ) |
| Of GS Mortgage Securities Corp., | ) |
| GSAA Home Equity Trust 2005-10 assett | ) |
| Backed certificates series 2005-10, Dr. JOSEF ACKERMAN, | ) |
| Dr. HUGO BANZINGER, ANTHONY DIIORIO, | ) |
| STEFAN KRAUSE,HERMAN-JOSET LAMBERTI, | ) |
| & | ) |
| **COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS** | ) |
| a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a | ) |
| COUNTRYWIDE HOME LOANS, DAVID SAMBUL, | ) |
| ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK | ) |
| | ) |
|    Defendants | ) |

### AMENDED NOTICE OF COMPLAINT

**THE PLAINTIFF IS** SEEKING REMEDY FROM THE COURT, BY HAVING THE ATTACHED DOCUMENT AS: EXHIBIT (A ) <u>RULED AND DECLAIRED A FRAUDULENT CONTRACT, ULTRA VIRES</u>
PLAINTIFF HEREBY RECSINDS HER SIGNATURE ( NUNC PRO TUNK ) FROM THE CONTRACT AS SHE DID NOT KNOW AT THE TIME IT WAS SIGNED THAT IT WAS A FRAUDULENT CONTRACT.

PLAINTIFF IS SEEKING NO DAMAGES, BUT HEREBY RESERVES ALL RIGHTS.
IF DEFENDANTS CHOOSE TO RESPOND TO THIS SUMMONS WITHIN THE 20 DAYS ALLOWED, PLAINTIFF MAY FILE CRIMINAL CHARGES AGAINST DEFENDANTS.

**EXHIBIT**

**A**

THE ATTACHED OVERWHFᴸMING EVIDENCE, AND THE MEMORANDOM OF LAW MAKES IT CLEAR THAT FRAUD W       N DEED COMMITED AND DEMAND´     REMEDY.

This suit is both corporately served, and individually served to the list defendants.

1.  Property involved is that certain parcel, lot or unit situate, lying and being in MIAMI-DADE County, Florida, as set forth in the mortgage recorded in Official records Book 23312, at Page 266, more particularly described as follows:

    LOT 1, BLOCK 10, SAGA BAY SECTION ONE PART 3, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 95, PAGE 74, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

    Dated at Coral Gables, MIAMI-DADE County, Florida this <u>30</u> day of <u>September</u>, 2008.

                                        Sharon E. Angulo,
                        Authorized Representative / Attorney-In-Fact For:
                                        SHARON E. ANGULO
                                        20304 SW 82 PLACE
                                        Miami, Fl. 33189
                                        (305) 323-6537

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION
COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA
Case # 08-57969 CA 01 (09)

| | | |
|---|---|---|
| SHARON E ANGULO | ) | |
| Plaintiff | ) | |
| VS. | ) | CIVIL ACTION SUMMONS |
| | ) | SUIT FOR CONTRACT FRAUD |
| DEUTSCHE BANK NATIONAL Trust Company On behalf | ) | PLAINTIFFS |
| Of GS Mortgage Securities Corp., | ) | |
| GSAA Home Equity Trust 2005-10 assett | ) | MEMORANDUM OF LAW |
| Backed certificates series 2005-10, Dr. JOSEF ACKERMAN, | ) | |
| Dr. HUGO BANZINGER, ANTHONY DIIORIO, | ) | IN SUPPORT OF BRIEF |
| STEFAN KRAUSE,HERMAN-JOSET LAMBERTI, | ) | |
| & | ) | |
| COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS) | | |
| a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a | ) | |
| COUNTRYWIDE HOME LOANS, DAVID SAMBUL, | ) | |
| ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK | ) | |
| | ) | |
| _____Defendants_____ | ) | |

**AMENDED NOTICE OF COMPLAINT OF FRAUDULENT MORTGAGE, CREDIT LOANS
AND VOID CONTRACTS,
PERFECT OBLIGATION AS TO A HUMAN BEING AS TO A BANK**

To the Honorable Judge of Said Court:

Plaintiff, SHARON E ANGULO, offers this Memorandum of law in order for the Court to advance it's

understanding of the complex legal issues, present and embodied in the Common Law, with authorities,

law and cases in support of, which will constitute the following facts:

1. Defendants and other privately owned banks are making loans of "credit" with the intended

   purpose of circulating "credit" as "money".

2.  Other financial institutions and individuals may "launder" bank credit that they receive directly or indirectly from privately owned banks.

3.  This collective activity is unconstitutional, unlawful, in violation of Common Law, U.S. Code and the principles of equity.

4.  Such activity and underlying contracts have long been held void, by State Courts, Federal Courts and the U.S. Supreme Court.

    This Memorandum will demonstrate through authorities and established common law, that credit "money creation" by privately owned bank corporations is not really "money creation" at all. It is the trade specialty and artful illusion of law merchants, which use old-time trade secrets of the Goldsmiths, to entrap the borrower and unjustly enrich the lender through usury and other unlawful techniques. Issues based on law and the principles of equity, which are within the jurisdiction of this Court, will be addressed.

## HISTORY OF MONEY AND BANKING

**The Goldsmiths**

In his book, *Money and Banking* (8th Edition, 1984), Professor David R. Kamerschen writes on pages 56 - 63:

> "The first bankers in the modern sense were the goldsmiths, who frequently accepted bullion and coins for storage ... One result was that the goldsmiths temporarily could lend part of the gold left with them . . . These loans of their customers' gold were soon replaced by a revolutionary technique. When people brought in gold, the goldsmiths gave them notes promising to pay that amount of gold on demand. The notes, first made payable to the order of the individual, were later changed to bearer obligations. In the previous form, a note payable to the order of Jebidiah Johnson would be paid to no one else unless Johnson had first endorsed the note ... But notes were soon being used in an unforeseen way. The note holders found that, when they wanted to buy something, they could use the note itself in payment more conveniently and let the other person go after the gold, which the person rarely did ...The specie, then tended to remain in the goldsmiths' vaults. . . . The goldsmiths began to realize that they might profit handsomely by issuing somewhat more notes than the amount of specie they held. . . These additional notes would cost the goldsmiths nothing except the negligible cost of printing them, yet the notes provided the goldsmiths with funds to lend at interest. . . .And they were to find that the profitability of their lending operations would exceed the profit from their original trade. The goldsmiths became bankers as their interest in manufacture of gold items to sell was replaced by their concern with credit policies and lending activities . . . They discovered early that, although an unlimited note issue would be unwise, they could issue notes up to several times the amount of specie they held. The key to the whole operation lay in the public's willingness to leave gold and silver in the bank's vaults and use the bank's notes. This discovery is the basis of modern banking."

On page 74, Professor Kamersch... further explains the evolution of the credit system:

"Later the goldsmiths learned a more efficient way to pu.. .heir credit money into circulation. They lent by issuing additional notes, rather than by paying out in gold. In exchange for the interest-bearing note received from their customer (in effect, the loan contract), they gave their own non-interest bearing note. Each was actually borrowing from the other ... The advantage of the later procedure of lending notes rather than gold was that . . . more notes could be issued if the gold remained in the vaults ... Thus, through the principle of bank note issuance, *banks learned to create money in the form of their own liability.*"
[Emphasis Added]

Another publication which explains modern banking as learned from the Goldsmiths is *Modern Money Mechanics* (5th edition 1992), published by the Federal Reserve Bank of Chicago which states beginning on page 3:

"It started with the goldsmiths ..." At one time, bankers were merely middlemen. They made a profit by accepting gold and coins brought to them for safekeeping and lending the gold and coins to borrowers. But the goldsmiths soon found that the receipts they issued to depositors were being used as a means of payment. 'Then, bankers discovered that they could make loans merely by giving borrowers their promises to pay, or bank notes... In this way, banks began to create money ... Demand deposits are the modern counterpart of bank notes . . . It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques, thereby printing *their own* money." [Emphasis added]

## MODERN MONEY AND BANKING

### How Banks Create Money

In the modern sense, banks create money by creating "demand deposits." Demand deposits are merely "book entries" that reflect how much lawful money the bank owes its customers. Thus, all deposits are called demand deposits and are the bank's liabilities. The bank's assets are the vault cash plus all the "IOUs" or promissory notes that the borrower signs when they borrow either money or credit. When a bank lends its cash (legal money), it loans its assets, but when a bank lends its "credit" it lends its liabilities. The lending of credit is, therefore, the exact opposite of the lending of cash (legal money).

At this point, we need to define the meaning of certain words like "lawful money", "legal tender", "other money" and "dollars". The terms "Money" and "Tender" had their origins in Article 1, Sec. 8 and Article 1, Sec. 10 of the *Constitution of the United States*. 12 U.S.C. §152 refers to "gold and silver coin as lawful money of the United States" and was unconstitutionally repealed in 1994 in-that Congress **can not delegate** any portion of their constitutional responsibility without Amendment. The

term "legal tender" was origina⁻ ⁻· cited in 31 U.S.C.A. §392 and is now re-codified in 31 U.S.C.A.

§5103 which states:

> **"United States coins and currency . . . are legal tender for all debts, public charges, taxes, and dues."**

The common denominator in both "lawful money" and "legal tender money" is that the United States

Government issues both.

With Bankers, however, we find that there are two forms of money - one is government-issued,

and privately owned banks such as Defendant's, Deutsche Bank National Trust and Countrywide Home

Loans, issue the other. As we have already discussed government issued forms of money, we must now

scrutinize privately issued forms of money.

All privately issued forms of money today are based upon the liabilities of the issuer. There are three

common terms used to describe this privately created money: They are "credit", "demand deposits" and

"chequebook money".

In the Sixth edition of Blacks Law Dictionary, p.367 under the term "Credit" the term "Bank

credit" is described as: "Money bank owes or will lend a individual or person". It is clear from this

definition that "Bank credit" which is the "money bank owes" is the bank's liability. The term

"chequebook money" is described in the book "*I Bet You Thought*", published by the privately owned

Federal Reserve Bank of New York, as follows:

> **"Commercial banks create chequebook money whenever they grant a loan, simply by adding deposit dollars to accounts on their books to exchange for the borrowers IOU . . . ."**

The word "deposit" and "demand deposit" both mean the same thing in bank terminology and refer to

the bank's liabilities. For example, the Chicago Federal Reserves publication, "*Modern Money*

*Mechanics*" states:

> **"Deposits are merely book entries ... Banks can build up deposits by increasing loans ... Demand deposits are the modern counterpart of bank notes.  It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques."**

Thus, it is demonstrated in "Modern Money Mechanics" how, under the practice of

fractional reserve banking, a deposit of $5,000 in cash could result in a loan of credit/chequebook

money/demand deposits of $100,000 if reserve ratios set by the Federal Reserve are 5% (instead of

10%).

In a practical application, here is how it works. If a bank has ten people who each deposit $5,000 (totaling $50,000) in cash (legal money) and the bank's reserve ratio is 5%, then the bank will lend twenty times this amount, or $1,000,000 in "credit" money. What the bank has actually done, however, is to write a cheque or loan its credit with the intended purpose of circulating credit as "money." Banks know that if all the people who receive a cheque or credit loan come to the bank and demand cash, the bank will have to close its doors because it doesn't have the cash to back up its cheque or loan. The bank's cheque or loan will, however, pass as money as long as people have confidence in the illusion and don't demand cash. Panics are created when people line up at the bank and demand cash (legal money), causing banks to fold as history records in several time periods, the most recent in this country was the panic of 1933.

The process of passing cheques or credit as money is done quite simply.  A deposit of $5,000 in cash by one person results in a loan of $100,000 to another person at 5% reserves.  The person receiving the cheque or loan of credit for $100,000 usually deposits it in the same bank or another bank in the Federal Reserve System.  The cheque or loan is sent to the bookkeeping department of the lending bank where a book entry of $100,000 is credited to the borrower's account.  The lending bank's cheque that created the borrower's loan is then stamped "Paid" when the account of the borrower is credited a "dollar" amount. The borrower may then "spend" these book entries (demand deposits) by writing cheques to others, who in turn deposit their cheques and have book entries transferred to their account from the borrower's chequeing account.

However, two highly questionable and unlawful acts have now occurred. The first was when the bank wrote the cheque or made the loan with insufficient funds to back them up. The second is when the bank stamps its own "Not Sufficient Funds" cheque "paid" or posts a loan by merely crediting the borrower's account with book entries the bank calls "dollars." Ironically, the cheque or loan seems good and passes as money -- unless an emergency occurs via demands for cash - or a Court challenge -- and the artful, illusion bubble, bursts.

**Different Kinds of Money**

The book, *"I Bet You Thought"* published by the Federal Reserve Bank of New York, states:

> **"Money is any generally accepted medium of exchange, not simply coin and currency. Money *doesn't* have to be intrinsically valuable , *be issued by a government* or be in any special form."** [Emphasis added]

Thus we see that privately issued forms of money only require public confidence in order to pass as money. Counterfeit money also passes as money as long as nobody discovers it's counterfeit. Like wise, "bad" cheques and "credit" loans pass as money so long as no one finds out they are unlawful. Yet, once the fraud is discovered, the values of such "bank money" like bad cheque's ceases to exist. There are, therefore, two kinds of money -- government issued legal money and privately issued unlawful money.

**Different Kinds of Dollars**

The dollar once represented something intrinsically valuable made from gold or silver. For example, in 1792, Congress defined the silver dollar as a silver coin containing 371.25 grains of pure silver. The legal dollar is now known as "United States coins and currency." However, the Banker's dollar has become a unit of measure of a different kind of money. Therefore, with Bankers there is a "dollar" of coins and a dollar of cash (legal money), a "dollar" of debt, a "dollar" of credit, a "dollar" of chequebook money or a "dollar" of cheques. When one refers to a dollar spent or a dollar loaned, he should now indicate what kind of "dollar" he is talking about, since Bankers have created so many different kinds.

A dollar of bank "credit money" is the exact opposite of a dollar of "legal money". The former is a liability while the latter is an asset. Thus, it can be seen from the earlier statement quoted from *I Bet You Thought*, that money can be privately issued as: "Money doesn't have to ... be issued by a government or be in any special form." It should be carefully noted that banks that issue and lend privately created money demand to be paid with government issued money. However, payment in like kind under natural equity would seem to indicate that a debt created by a loan of privately created money can be paid with other privately created money, without regard for "any special form" as there are no statutory laws to dictate how either private citizens or banks may create money.

**By What Authority?**

By what authority do state and national banks, as privately owned corporations, create money by lending their credit -- or more simply put - by writing and passing "bad" cheques and "credit" loans as

"money"? Nowhere can a law be found that gives banks the authority to create money by lending their liabilities.

Therefore, the next question is, if banks are creating money by passing bad cheques and lending their credit, where is their authority to do so? From their literature, banks claim these techniques were learned from the trade secrets of the Goldsmiths. It is evident, however, that money creation by private banks is not the result of powers conferred upon them by government, but rather the artful use of long held "trade secrets." Thus, unlawful money creation is not being done by banks as corporations, but unlawfully by bankers.

Article I, Section 10, para. 1 of the *Constitution of the United States of America* specifically states that no state shall **"... coin money, emit bills of credit, make any Thing but gold and silver coin a Tender in Payment of Debts, pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligations of Contracts . . ."**[Emphasis added]  The states, which grant the Charters of state banks also, prohibit the emitting of Bills of credit by not granting such authority in bank charters.

It is obvious that "We the people" never delegated to Congress, state government, or agencies of the state, the power to create and issue money in the form of cheques, credit, or other "bills of credit." The Federal Government today does not authorize banks to emit, write, create, issue and pass cheques and credit as money. But banks do, and get away with it! Banks call their privately created money nice sounding names, like "credit", "demand deposits", or "Chequebook money". However, the true nature of "credit money" and "cheques" does not change regardless of the poetic terminology used to describe them. Such money in common use by privately owned banks is illegal under Art. 1, Sec. 10, para. 1 of the Constitution of the United States of America, as well as unlawful under the laws of the United States and of this State.

**Void "ULTRA VIRES" Contracts**

*Black's Law Dictionary* defines the Latin term "extra vires" to mean beyond powers. *Black's Law Dictionary* explains the term "ultra vires" embraces "[a]n act performed without any authority to act on subject. *Haslund v. City of Seattle*, 86 Wash.2d 607, 547 P.2d 1221, 1230. Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. *State ex rel. v. Holston*

*Trust Col.* 168 Tenn. 546, 79 S ʼ    d 1012, 1016. The term has a broad applic⌐...on and includes not only

acts prohibited by the charter, but acts which are in excess of powers granteᴅ ⌐nd not prohibited, and

generally applied either when a corporation has no power whatever to do an act, or when the corporation

has the power, but exercises it irregularly. *People ex rel. Barrett v. Bank of Peoria,* 295 Ill.App. 543, 15

N.E.2d 333, 335. Act is ultra vires when corporation is without authority to perform it under any

circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the

scope of its corporate powers is unlawful. *Community Federal Sav. & Loan Ass'n of Independence, Mo.*

*v. Fields, C.C.A., Mo.,* 128 F.2d 705, 708." *Black's* 6th Edition, p. 1522.

      The courts have long held that when a corporation executes a contract beyond the scope of its

charter or granted corporate powers, the contract is void or "ultra vires".

1. In *Central Transp. Co. v. Pullman*, 139 U.S. 60, 11 S. Ct. 478, 35 L. Ed. 55, the court said: "A

contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the

corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain

any action upon the unlawful contract, have always striven to do justice between the parties, so far as

could be done consistently with adherence to law, by permitting property or money, parted with on the

faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case,

however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an

implied contract of the defendant to return, or, failing to do that, to make compensation for, property or

money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the

unlawful contract."

2. "When a contract is once declared ultra vires, the fact that it is executed · does not validate it, nor

can it be ratified, so as to make it the basis of suitor action, nor does the doctrine of estoppel apply." *F&*

*PR v. Richmond*, 133 SE 898; 151 Va 195.

3. "A national bank ... cannot lend its credit to another by becoming surety, indorser, or guarantor for

him, such an act ; is ultra vires . . ." *Merchants' Bank v. Baird* 160 F 642. (Additional cases are cited as

footnotes at the end of this Memorandum.)

The Question of Lawful Con~~~~ ~tion

The issue of whether the lender who writes and passes a "bad" cheque or makes a "credit" loan has a claim for relief against the borrower is easy to answer, providing the lender can prove that he gave a lawful consideration, based upon lawful acts. But did the lender give a lawful consideration? **To give a lawful consideration, the lender must prove that he gave the borrower lawful money such as coins or currency. Failing that, he can have no claim for relief in a court at law against the borrower as the lender's actions were ultra vires or void from the beginning of the transaction.**

It can be argued that "bad" cheques or "credit" loans that pass as money are valuable; but so are counterfeit coins and currency that pass as money. It seems unconscionable that a bank would ask homeowners to put up a homestead as collateral for a "credit loan" that the bank created out of thin air. Would this court of law or equity allow a counterfeiter to foreclose against a person's home because the borrower was late in payments on an unlawful loan of counterfeit money? Were the court to do so, it would be contrary to all principles of law.

The question of valuable consideration in the case at bar, does not depend on any value imparted by the lender, but the false confidence instilled in the "bad" cheque or "credit" loan by the lender. In a court at law or equity, the lender has no claim for relief. The argument that because the borrower received property for the lender's "bad" cheque or "credit" loan gives the lender a claim for relief is not valid, unless the lender can prove that he gave lawful value. The seller in some cases who may be holding the "bad" cheque or "Credit" loan has a claim for relief against the lender or the borrower or both, but the lender has no such claim.

Borrower Relief

Since we have established that the lender of unlawful or counterfeit money has no claim for relief under a void contract, the last question should be, does the borrower have a claim for relief against the lender?

First, if it is established that the borrower has made no payments to the lender, then the borrower has no claim for relief 'against the lender for money damages. But the borrower has a claim for relief to void the debt he owes the lender for notes or obligations unlawfully created by an ultra vires contract for lending "credit" money.

The borrower, the C~   , nave long held, has a claim for relief aga...st the lender to have the note, security agreement, or mortgage note the borrower signed deci... ed null and void.

The borrower may also have claims for relief for breach of contract by the lender for not lending "lawful money" and for "usury" for charging an interest rate several times greater than the amount agreed to in the contract for any lawful money actually risked by the lender. For example, if on a $100,000 loan it can be established that the lender actually risked only $5,000 (5% Federal Reserve ratio) with a contract interest rate of 10%, the lender has then loaned $95,000 of "credit" and $5,000 of "lawful money". However, while charging 10% interest ($10,000) on the entire $100,000. The true interest rate on the $5,000 of "lawful money" actually risked by the lender is 200% which violates Usury laws of this state. If no "lawful money" was loaned, then the interest rate is an infinite percentage. Such techniques the bankers say were learned from the trade secrets of the Goldsmiths.

The Courts have repeatedly ruled that such contracts with borrowers are wholly void from the beginning of the transaction, because banks are not granted powers to enter into such contracts by either state or national charters.


**Additional Borrower Relief**

In Federal District Court the borrower may have additional claims for relief under "Civil RICO" Federal Racketeering laws (18 U.S.C. §1964). The lender may have established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the lender may be in violation of 18 U.S.C. §§§§1341, 1343, 1961 and 1962. The borrower may have other claims for relief if he can prove there was or is a conspiracy to deprive him of property without due process of law under. (42 U.S.C.§§§1983 (Constitutional Injury), 1985(Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong), Under 18 U.S.C.A.§ 241 (Conspiracy) violators, "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both."

In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate." The Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan

sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action... Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank. 755 F2d 239, Cert. denied, 473 US 906 (1985).

The Supreme Court found that the Plaintiff in a civil RICO action, need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. Sedima, SPRL v. Imrex Co., 473 US 479 (1985).

## CASE CITES IN SUPPORT

### ULTRA VIRES CONTRACTS

1. "A contract is ultra virus being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it. The courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm the unlawful contract." *Pullman v. Central Transp. Co.*, 139 U.S. 62, 11 S.Ct. 478, 35 L.Ed. 55

2. "When a contract is once declared ultra virus, the fact that it is executed does not validate it, nor can it be ratified, so as to make it the basis of suit or action, nor does the doctrine of estoppel apply." *F&PR v. Richmond*, 133 SE 898; 151 Va. 195.

3. "A national bank . . . cannot lend its credit to another by becoming surety, indorser or guarantor for him, such an act is ultra vires . . ." *Merchants Bank v. Baird,* 160 F 642.

### LOAN OF CREDIT

4. "In the federal courts, it is well established that a national bank has not power to lend its credit to another by becoming surety, endorser, or guarantor for him." *Farmers and Miners Bank v. Bluefield Nat'l Bank,* 11 F.2d 83, 271 U.S. 669.

5. "A national bank has no r~ ~cr to lend its credit to any person or corpoiation." *Bowen v. Needles Nat. Bank*, 94 F. 9_ ,6 CCA 553, certiorari denied In 20 S   1024, 176 US 682, 44 L.Ed 637.

6. "Mr. Justice Marshall said: 'The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often . . .'" *Zinc Carbonate Co. v. First National Bank,* 103 Wis. 125, 79 NW 229, *American Express Co. v. Citizens State Bank*, 194 NW 430.

7. "A bank may not lend its credit to another, even though such a transaction turns out to have been of benefit to the bank, and in support of this a list of cases might be cited, which would look like a catalog of ships." *Norton Grocery Co. v. Peoples Nat. Bank*, 144 SE 505, 151 Va 195.

8. "It has been settled beyond controversy that a national bank, under federal law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires. . ." *Howard & Foster Co. v. Citizens Nat'l Bank of Union*, 133 SC 202, 130 SE 759 (1926).

9. ". . . checks, drafts, money orders and bank notes are not lawful money of the United States . . ." *State v. Neilon,* 73 Pac. 324, 43 Ore. 168.

10. "Neither, as included in its powers, nor incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics . . . Indeed, lending credit is the exact opposite of lending money which is the real business of a bank, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another." 1 Morse, *Banks and Banking,* 5th Ed. Sec. 65; Magee, *Banks and Banking,* 3rd Ed. Sec. 248." *American Express Co. v. Citizens State Bank,* 194 NW 429.

11. "It is not within those statutory powers for a national bank, even though solvent, to lend its credit to another in any of the various ways in which that might be done." *Federal Intermediate Credit Bank v. L. Herrison,* 33 F.2d 841, 842 (1929).

12. "There is no doubt but what the law is that a national bank cannot lend its credit or become an accommodation endorser." *National Bank of Commerce v. Atkinson,* 56 F. 471.

13. "A bank can lend its money, but not its credit." *First Nat'l Bank of Tallapoosa v. Monroe,* 135 Ga 614, 69 F. 1124, 32 LRA (NS) 550.

14. ". . . the bank is allowed to lend money upon personal security, but it must be money that it loans, not its credit." *Sellgman v. Charlottesville Nat. Bank,* 3 Hughes 647, Fed. Case No. 12, 642, 1039.

## LOANS OF MONEY

15. "A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement express or implied, to repay the sum with or without interest." *Parsons v. Fox,* 179 Ga 605, 176 SE 644. Also see *Kirkland v. Bailey,* 155 SE 2d 701, and *United States v. Neifert White Co.,* 247 Fed.Supp. 878, 879. "The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange. . ." e.v. *Railey* 280 Ky 319, 133 SW2d 75.

## PROMISE TO PAY NOT EQUIVALENT TO PAYMENT

16. "A promise to pay cannot, by argument, however ingenious, be made the equivalent of actual payment . . ." *Christensen v. Beebe,* 91 P 133, 32 Utah 406.

17. "A check is merely an order on a bank to pay money." *Young v. Hembree,* 73 P2d 393.

## HOLDER IN DUE COURSE

18. **"A bank is not the holder in due course upon merely crediting the depositor's account."** *Bankers Trust v. Nagler,* 229 NYS2d 142, 143.

## FRAUD AND MISREPRESENTATION

19. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." *Barnsdall Refining Corp. v. Bimarn Wood Oil Co.,* 92 F.2d S17.

20. "Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." *Leonard v. Springer,* 197 Ill 532, 64 NE 301.

21. "It is not necessary for recision of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations even innocently to retain the fruits of a bargain induced by such representations." *Whipp v. Iverson,* 43 Wis.2d 166.

## CONSIDERATION

22. "If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise, one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." *Menominee River Co. v. Augustus Spies L&C Co.,* 147 Wis 559, 572; 132 NW 1122.

"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Agency v. Guardian Mut. Savings Bank,* 227 Wis. 550, 279 NW 83.

## RICO

23. In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate," the Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. *Durante Bros. & Sons, Inc. v. Flushing Nat. Bank,* 755 F.2d 239, cert. denied, 473 US 906 (1985).

24. The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not

demonstrate that the Defen⌐  ⌐t ıs an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffer⌐     ⌐me type of special Racketeering inju:      ıl that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and tne civil remedies for its violation are to be liberally construed to effect the Congressional purpose as broadly formulated in the statute. *Sedima, SPRL v. Imrex Co.,* 473 US 479 (1985)

## FEDERAL RESERVE BANK

25. "Each Federal Reserve bank is a separate corporation owned by commercial banks in its region . . ." *Lewis v. United States,* 680 F.2d 1239 (1982).


Plaintiff has 20 calendar days to respond effective date of filing,

## Certificate of Mailing

I, Sharon E. Angulo, certify that on day 30, September 2008, I mailed a true and correct copy of

the above and foregoing claim of contract fraud to:


Dr. Josef Ackerman, Chairman
**Deutsche Bank Trust Company Americas**
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5960

Dr. Hugo Banzinger, Chief Risk Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5977

Stefan Krause, Chief Financial Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5991

Herman-Josef Lamberti, Chief Operating Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 6004

Angelo Mozilo, Financial Director/ CEO
**Countrywide Financial Corporate Headquarters**
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6011

David Sambul, President.
Countrywide Financial Corporate Headquarters
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6028

S. Dean Lesiak
Managing Director & Chief Compliance
Officer.
Countrywide Financial Corporate Headquarters
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6073

Eric Sieracki
CFO
Countrywide Financial Corporate Headquarters
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail # 7006 2150 0001 6725 1230

VERIFICATION

I verify that the statements made in the foregoing document are true and correct to the best of my

knowledge.  I understand that false statements made are subject to the penalties of 18 Pa. C.S. 4904,

relating to unsworn falsification to authorities.

Prepared and Respectfully Submitted by,

Sharon E. Angulo,

Authorized Representative / Attorney-In-Fact For:

SHARON E. ANGULO

20304 SW 82 PLACE

Miami, Fl. 33189

(305) 323-6537

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION
COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA
Case # 08-57969 CA 01 (09)

| | | |
|---|---|---|
| SHARON E ANGULO | ) | |
| Plaintiff | | |
| Vs | ) | CIVIL ACTION SUMMONS |
| DEUTSCHE BANK NATIONAL Trust Company On behalf | ) | SUIT FOR CONTRACT FRAUD PLAINTIFFS |
| Of GS Mortgage Securities Corp., | ) | |
| GSAA Home Equity Trust 2005-10 assett | ) | MEMORANDUM OF LAW |
| Backed certificates series 2005-10, Dr. JOSEF ACKERMAN, | ) | |
| Dr. HUGO BANZINGER, ANTHONY DIIORIO, | ) | IN SUPPORT OF BRIEF |
| STEFAN KRAUSE,HERMAN-JOSET LAMBERTI, | ) | |
| & | ) | |
| COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS) | | |
| a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a | ) | |
| COUNTRYWIDE HOME LOANS, DAVID SAMBUL, | ) | |
| ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK | ) | |
| | ) | |
| Defendants | ) | |

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint/amended complaint or petition on defendant(s):

CT CORPORATIONS
On behalf of COUNTRYWIDE HOME LOANS
818 WEST SEVENTH STREET
LOS ANGELES CA 90017

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney you may call an attorney referral service or legal aid office (listed in the phone book)

    If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a carbon copy or photocopy of your written response to the 'plaintiff' listed below:

SHARON E ANGULO
20304 SW 82 PLACE
MIAMI, FL. 33189

CLERK OF THE CIRCUIT COURT

DATED: _____   BY: _____ 8125

DEPUTY CLERK OF COURT

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días contados a partir del recibo de esta notificacion para contestar la demanda adjunta, por escrito, y presentarla ante ese tribunal. Una llamada telefonica no le protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero de caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/ Plaintiff Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pur vous proteger. Vous etes oblige de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaissez pas d'avocate, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones)

This notice is provided pursuant to Administrative Order No.2.031-9/96

## SPANISH

De acuerdo con el Acta de los Americanos con impedimentos, aquellas personas que necesiten de algún servicio especial para participar en este proceso o tener acceso a servicios, programas ó actividades de La Corte deberán, dentro de un periódo rasonable antes de cualquier proceso o de tener necesidad de acceso a servicios, programas ó actividades, ponerse en contacto con La Oficina Administrativa de la Corte, que esti situada en el MIAMI-DADE, ó a los telefonos 305-275-1155, ó 1-800-955-8771 (TDD) y Si usa el servicio Florida Relay Service al 1-800-955-8770 (V).

## CREOLE

D'apre'akö ki té fet avek Akt Pou Amerikin ki Infim, tout moun ki genyen yon bzwen éspesyal pou akomodasyon pou yo patisipé nan pwost obyen pou gin aks. Sèvis, pwogram ak aktivité tibinal-la, dwé nan yon tan rézonab anvan okin pwose oubyen bezwen aksé sevis, pwogram oubyen aktivité fet, yo dwé konta Ofis Tribinal-la ki nan MIAMI-DADE, niméro téléfonn-nan: sé 305-275-1155, ou byen 1-800-955-8771 (TDD) ou byen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

## FRENCH

En accordance avec l'Acte Pour les Americains Incapacites', les personnes en besoin d'une accommodation spéciale pour participer à ces procédures, ou bien pour avoir accès au service, progamme, ou activité de la Court doivent, dans un temps raisonable, avant aucune procedures ou besoin d'accès de service, programme ou activité, contacter l'Office Administrative de la Court, situé au numéro MIAMI-DADE, le numéro de téléphone 305-275-1155, ou 1-800-955-8771 (TDD), ou 1-800-955-8770 (V) ou par Florida Relay Service.

This space is for recording purposes only

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA**

**GENERAL JURISDICTION DIVISION
COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA**

Case # 08-57969 CA 01 (09)

| | |
|---|---|
| SHARON E ANGULO | ) |
| Plaintiff | ) |
| VS. | ) |
| **DEUTSCHE BANK NATIONAL** Trust Company On behalf | ) |
| Of GS Mortgage Securities Corp., | ) |
| GSAA Home Equity Trust 2005-10 assett | ) |
| Backed certificates series 2005-10, Dr. JOSEF ACKERMAN, | ) |
| Dr. HUGO BANZINGER, ANTHONY DIIORIO, | ) |
| STEFAN KRAUSE,HERMAN-JOSET LAMBERTI, | ) |
| & | ) |
| **COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS)** | |
| a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a | ) |
| COUNTRYWIDE HOME LOANS, DAVID SAMBUL, | ) |
| ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK | ) |
| | ) |
| Defendants | ) |

Amended   NOTICE OF COMPLAINT OF FRAUDULENT MORTGAGE, CREDIT LOANS
AND VOID CONTRACTS,
PERFECT OBLIGATION AS TO A HUMAN BEING AS TO A BANK

1.   The above named Defendants, AND ALL OTHERS WHOM IT MAYCONCERN;

Filed by Plaintiff's Request

2. YOU ARE NOTIFIED         e institution of this action by the Plaintiff        .nst you seeking release
   of lien, release of loan,    ad .dition to granting and conveying of title         nterest free of all
   encumbrances.

3. Property involved is that certain parcel, lot or unit situate, lying and being in MIAMI-DADE
   County, Florida, as set forth in the mortgage recorded in Official records Book 23312, at Page
   266, more particularly described as follows:

   LOT 1, BLOCK 10, SAGA BAY SECTION ONE PART 3, ACCORDING TO THE PLAT
   THEREOF, RECORDED IN PLAT BOOK 95, PAGE 74, OF THE PUBLIC RECORDS OF
   MIAMI-DADE COUNTY, FLORIDA.

   Dated at Coral Gables, MIAMI-DADE County, Florida this 30 day of September, 2008.

                                   Sharon E. Angulo,
                    Authorized Representative / Attorney-In-Fact For:
                                   SHARON E. ANGULO
                                   20304 SW 82 PLACE
                                   Miami, Fl. 33189
                                   (305) 323-6537

IN THE CIRCUIT COURT    THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION
COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA
Case # 08-57969 CA 01 (09)

| | | |
|---|---|---|
| SHARON E ANGULO | ) | |
| Plaintiff | ) | |
| VS. | ) | **CIVIL ACTION SUMMONS** |
| **DEUTSCHE BANK NATIONAL** Trust Company On behalf | ) | **PLAINTIFFS** |
| Of GS Mortgage Securities Corp., | ) | |
| GSAA Home Equity Trust 2005-10 assett | ) | **MEMORANDUM OF LAW** |
| Backed certificates series 2005-10, Dr. JOSEF ACKERMAN, | ) | |
| Dr. HUGO BANZINGER, ANTHONY DIIORIO, | ) | **IN SUPPORT OF BRIEF** |
| STEFAN KRAUSE,HERMAN-JOSET LAMBERTI, | ) | |
| & | ) | |
| **COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS**) | | |
| a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a | ) | |
| COUNTRYWIDE HOME LOANS, DAVID SAMBUL, | ) | |
| ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK | ) | |
| | ) | |
| Defendants | ) | |

**AMENDED NOTICE OF COMPLAINT OF FRAUDULENT MORTGAGE, CREDIT LOANS
AND VOID CONTRACTS,
PERFECT OBLIGATION AS TO A HUMAN BEING AS TO A BANK**

To the Honorable Judge of Said Court:

Plaintiff, SHARON E ANGULO, offers this Memorandum of law in order for the Court to advance it's

understanding of the complex legal issues, present and embodied in the Common Law, with authorities,

law and cases in support of, which will constitute the following facts:

1.  Defendants and other privately owned banks are making loans of "credit" with the intended

    purpose of circulating "credit" as "money".

2.  Other financial institutions and individuals may "launder" bank credit that they receive directly or

    indirectly from privately owned banks.

Filed by Plaintiff's Request

3.  This collective activity is  .constitutional, unlawful, in violation of Cᴏ...non Law, U.S. Code
    and the principles of eᴜ  ⁄.

4.  Such activity and underlying contracts have long been held void, by State Courts, Federal Courts
    and the U.S. Supreme Court.

    This Memorandum will demonstrate through authorities and established common law, that credit
    "money creation" by privately owned bank corporations is not really "money creation" at all.  It is
    the trade specialty and artful illusion of law merchants, which use old-time trade secrets of the
    Goldsmiths, to entrap the borrower and unjustly enrich the lender through usury and other
    unlawful techniques.  Issues based on law and the principles of equity, which are within the
    jurisdiction of this Court, will be addressed.

## HISTORY OF MONEY AND BANKING

**The Goldsmiths**

In his book, *Money and Banking* (8th Edition, 1984), Professor David R. Kamerschen writes on pages

56 - 63:

> "The first bankers in the modern sense were the goldsmiths, who frequently accepted
> bullion and coins for storage ... One result was that the goldsmiths temporarily could lend
> part of the gold left with them . . . These loans of their customers' gold were soon replaced
> by a revolutionary technique. When people brought in gold, the goldsmiths gave them notes
> promising to pay that amount of gold on demand.  The notes, first made payable to the
> order of the individual, were later changed to bearer obligations.  In the previous form, a
> note payable to the order of Jebidiah Johnson would be paid to no one else unless Johnson
> had first endorsed the note ... But notes were soon being used in an unforeseen way.  The
> note holders found that, when they wanted to buy something, they could use the note itself
> in payment more conveniently and let the other person go after the gold, which the person
> rarely did ...The specie, then tended to remain in the goldsmiths' vaults. . . . The goldsmiths
> began to realize that they might profit handsomely by issuing somewhat more notes than
> the amount of specie they held. . . These additional notes would cost the goldsmiths nothing
> except the negligible cost of printing them, yet the notes provided the goldsmiths with funds
> to lend at interest. . . .And they were to find that the profitability of their lending operations
> would exceed the profit from their original trade. The goldsmiths became bankers as their
> interest in manufacture of gold items to sell was replaced by their concern with credit
> policies and lending activities . . . They discovered early that, although an unlimited note
> issue would be unwise, they could issue notes up to several times the amount of specie they
> held.  The key to the whole operation lay in the public's willingness to leave gold and silver
> in the bank's vaults and use the bank's notes. This discovery is the basis of modern
> banking."

On page 74, Professor Kamerschen further explains the evolution of the credit system:

"Later the goldsmiths ..arned a more efficient way to put ...eir credit money into circulation. They len⸍    issuing additional notes, rather than ⸍   paying out in gold. In exchange for the inte.  .-bearing note received from their cu.    .er (in effect, the loan contract), they gave their own non-interest bearing note. Each was actually borrowing from the other ... The advantage of the later procedure of lending notes rather than gold was that . . . more notes could be issued if the gold remained in the vaults ... Thus, through the principle of bank note issuance, *banks learned to create money in the form of their own liability.*"
[Emphasis Added]

Another publication which explains modern banking as learned from the Goldsmiths is *Modern Money Mechanics* (5th edition 1992), published by the Federal Reserve Bank of Chicago which states beginning on page 3:

"It started with the goldsmiths ..." At one time, bankers were merely middlemen. They made a profit by accepting gold and coins brought to them for safekeeping and lending the gold and coins to borrowers. But the goldsmiths soon found that the receipts they issued to depositors were being used as a means of payment. 'Then, bankers discovered that they could make loans merely by giving borrowers their promises to pay, or bank notes... In this way, banks began to create money ... Demand deposits are the modern counterpart of bank notes . . . It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques, thereby printing *their own* money." [Emphasis added]

## MODERN MONEY AND BANKING

### How Banks Create Money

In the modern sense, banks create money by creating "demand deposits." Demand deposits are merely "book entries" that reflect how much lawful money the bank owes its customers. Thus, all deposits are called demand deposits and are the bank's liabilities. The bank's assets are the vault cash plus all the "IOUs" or promissory notes that the borrower signs when they borrow either money or credit. When a bank lends its cash (legal money), it loans its assets, but when a bank lends its "credit" it lends its liabilities. The lending of credit is, therefore, the exact opposite of the lending of cash (legal money).

At this point, we need to define the meaning of certain words like "lawful money", "legal tender", "other money" and "dollars". The terms "Money" and "Tender" had their origins in Article 1, Sec. 8 and Article 1, Sec. 10 of the *Constitution of the United States*. 12 U.S.C. §152 refers to "gold and silver coin as lawful money of the United States" and was unconstitutionally repealed in 1994 in-that Congress **can not delegate** any portion of their constitutional responsibility without Amendment. The term "legal tender" was originally cited in 31 U.S.C.A. §392 and is now re-codified in 31 U.S.C.A.

§5103 which states:

> **"United States coins ẋ    currency . . . are legal tender for all del    ,ublic charges, taxes, and dues."**

The common denominator in both "lawful money" and "legal tender money" is that the United States Government issues both.

With Bankers, however, we find that there are two forms of money - one is government-issued, and privately owned banks such as Defendant's, Deutsche Bank National Trust and Countrywide Home Loans, issue the other. As we have already discussed government issued forms of money, we must now scrutinize privately issued forms of money.

All privately issued forms of money today are based upon the liabilities of the issuer. There are three common terms used to describe this privately created money: They are "credit", "demand deposits" and "chequebook money".

In the Sixth edition of Blacks Law Dictionary, p.367 under the term "Credit" the term "Bank credit" is described as: "Money bank owes or will lend a individual or person". It is clear from this definition that "Bank credit" which is the "money bank owes" is the bank's liability. The term "chequebook money" is described in the book "*I Bet You Thought*", published by the privately owned Federal Reserve Bank of New York, as follows:

> **"Commercial banks create chequebook money whenever they grant a loan, simply by adding deposit dollars to accounts on their books to exchange for the borrowers IOU . . . ."**

The word "deposit" and "demand deposit" both mean the same thing in bank terminology and refer to the bank's liabilities. For example, the Chicago Federal Reserves publication, "*Modern Money Mechanics*" states:

> **"Deposits are merely book entries ... Banks can build up deposits by increasing loans ... Demand deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques."**

Thus, it is demonstrated in "Modern Money Mechanics" how, under the practice of fractional reserve banking, a deposit of $5,000 in cash could result in a loan of credit/chequebook money/demand deposits of $100,000 if reserve ratios set by the Federal Reserve are 5% (instead of 10%).

In a practical application, ...re is how it works. If a bank has ten peopl... ...ho each deposit $5,000 (totaling $50,000) in cash (lega... ...ney) and the bank's reserve ratio is 5%, th... ...he bank will lend twenty times this amount, or $1,000,000 in "credit" money. What the bank has actually done, however, is to write a cheque or loan its credit with the intended purpose of circulating credit as "money." Banks know that if all the people who receive a cheque or credit loan come to the bank and demand cash, the bank will have to close its doors because it doesn't have the cash to back up its cheque or loan. The bank's cheque or loan will, however, pass as money as long as people have confidence in the illusion and don't demand cash. Panics are created when people line up at the bank and demand cash (legal money), causing banks to fold as history records in several time periods, the most recent in this country was the panic of 1933.

The process of passing cheques or credit as money is done quite simply.  A deposit of $5,000 in cash by one person results in a loan of $100,000 to another person at 5% reserves.  The person receiving the cheque or loan of credit for $100,000 usually deposits it in the same bank or another bank in the Federal Reserve System.  The cheque or loan is sent to the bookkeeping department of the lending bank where a book entry of $100,000 is credited to the borrower's account.  The lending bank's cheque that created the borrower's loan is then stamped "Paid" when the account of the borrower is credited a "dollar" amount. The borrower may then "spend" these book entries (demand deposits) by writing cheques to others, who in turn deposit their cheques and have book entries transferred to their account from the borrower's chequeing account.

However, two highly questionable and unlawful acts have now occurred. The first was when the bank wrote the cheque or made the loan with insufficient funds to back them up. The second is when the bank stamps its own "Not Sufficient Funds" cheque "paid" or posts a loan by merely crediting the borrower's account with book entries the bank calls "dollars." Ironically, the cheque or loan seems good and passes as money -- unless an emergency occurs via demands for cash - or a Court challenge -- and the artful, illusion bubble, bursts.

**Different Kinds of Money**

The book, "*I Bet You Thought*", published by the Federal Reserve Bank of New York, states:

"Money is any generally ...cepted medium of exchange, not simply ..in and currency. Money *doesn't* have t/ ... intrinsically valuable , *be issued by a go·  ·ment* or be in any special form." [Emph...  added]

Thus we see that privately issued forms of money only require public confidence in order to pass as money. Counterfeit money also passes as money as long as nobody discovers it's counterfeit. Like wise, "bad" cheques and "credit" loans pass as money so long as no one finds out they are unlawful. Yet, once the fraud is discovered, the values of such "bank money" like bad cheque's ceases to exist. There are, therefore, two kinds of money -- government issued legal money and privately issued unlawful money.

### Different Kinds of Dollars

The dollar once represented something intrinsically valuable made from gold or silver. For example, in 1792, Congress defined the silver dollar as a silver coin containing 371.25 grains of pure silver. The legal dollar is now known as "United States coins and currency." However, the Banker's dollar has become a unit of measure of a different kind of money. Therefore, with Bankers there is a "dollar" of coins and a dollar of cash (legal money), a "dollar" of debt, a "dollar" of credit, a "dollar" of chequebook money or a "dollar" of cheques. When one refers to a dollar spent or a dollar loaned, he should now indicate what kind of "dollar" he is talking about, since Bankers have created so many different kinds.

A dollar of bank "credit money" is the exact opposite of a dollar of "legal money". The former is a liability while the latter is an asset. Thus, it can be seen from the earlier statement quoted from *I Bet You Thought*, that money can be privately issued as: "Money doesn't have to ... be issued by a government or be in any special form." It should be carefully noted that banks that issue and lend privately created money demand to be paid with government issued money. However, payment in like kind under natural equity would seem to indicate that a debt created by a loan of privately created money can be paid with other privately created money, without regard for "any special form" as there are no statutory laws to dictate how either private citizens or banks may create money.

### By What Authority?

By what authority do state and national banks, as privately owned corporations, create money by lending their credit -- or more simply put - by writing and passing "bad" cheques and "credit" loans as

"money"? Nowhere can a law be ...nd that gives banks the authority to create ...oney by lending their liabilities.

Therefore, the next question is, if banks are creating money by passing bad cheques and lending their credit, where is their authority to do so? From their literature, banks claim these techniques were learned from the trade secrets of the Goldsmiths. It is evident, however, that money creation by private banks is not the result of powers conferred upon them by government, but rather the artful use of long held "trade secrets." Thus, unlawful money creation is not being done by banks as corporations, but unlawfully by bankers.

Article I, Section 10, para. 1 of the *Constitution of the United States of America* specifically states that no state shall "**... coin money, emit bills of credit, make any Thing but gold and silver coin a Tender in Payment of Debts, pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligations of Contracts . . .**"[Emphasis added] The states, which grant the Charters of state banks also, prohibit the emitting of Bills of credit by not granting such authority in bank charters.

It is obvious that "We the people" never delegated to Congress, state government, or agencies of the state, the power to create and issue money in the form of cheques, credit, or other "bills of credit." The Federal Government today does not authorize banks to emit, write, create, issue and pass cheques and credit as money. But banks do, and get away with it! Banks call their privately created money nice sounding names, like "credit", "demand deposits", or "Chequebook money". However, the true nature of "credit money" and "cheques" does not change regardless of the poetic terminology used to describe them. Such money in common use by privately owned banks is illegal under Art. 1, Sec. 10, para. 1 of the Constitution of the United States of America, as well as unlawful under the laws of the United States and of this State.


**Void "ULTRA VIRES" Contracts**

*Black's Law Dictionary* defines the Latin term "extra vires" to mean beyond powers. *Black's Law Dictionary* explains the term "ultra vires" embraces "[a]n act performed without any authority to act on subject. *Haslund v. City of Seattle,* 86 Wash.2d 607, 547 P.2d 1221, 1230. Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. *State ex rel. v. Holston*

*Trust Col,* 168 Tenn. 546, 79 S.W...J 1012, 1016. The term has a broad applica...Jn and includes not only

acts prohibited by the charter, b... ...cts which are in excess of powers granted   ... not prohibited, and

generally applied either when a corporation has no power whatever to do an act, or when the corporation

has the power, but exercises it irregularly. *People ex rel. Barrett v. Bank of Peoria,* 295 Ill.App. 543, 15

N.E.2d 333, 335. Act is ultra vires when corporation is without authority to perform it under any

circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the

scope of its corporate powers is unlawful. *Community Federal Sav. & Loan Ass'n of Independence, Mo.*

*v. Fields, C.C.A., Mo.,* 128 F.2d 705, 708." *Black's* 6th Edition, p. 1522.

      The courts have long held that when a corporation executes a contract beyond the scope of its

charter or granted corporate powers, the contract is void or "ultra vires".

1. In *Central Transp. Co. v. Pullman,* 139 U.S. 60, 11 S. Ct. 478, 35 L. Ed. 55, the court said: "A

contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the

corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain

any action upon the unlawful contract, have always striven to do justice between the parties, so far as

could be done consistently with adherence to law, by permitting property or money, parted with on the

faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case,

however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an

implied contract of the defendant to return, or, failing to do that, to make compensation for, property or

money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the

unlawful contract."

2. "When a contract is once declared ultra vires, the fact that it is executed · does not validate it, nor

can it be ratified, so as to make it the basis of suitor action, nor does the doctrine of estoppel apply." *F&*

*PR v. Richmond,* 133 SE 898; 151 Va 195.

3. "A national bank ... cannot lend its credit to another by becoming surety, indorser, or guarantor for

him, such an act ; is ultra vires . . ." *Merchants' Bank v. Baird* 160 F 642. (Additional cases are cited as

footnotes at the end of this Memorandum.)

**The Question of Lawful Consideration**

The issue of whether the lender who writes and passes a "bad" cheque makes a "credit" loan has a claim for relief against the borrower is easy to answer, providing the lender can prove that he gave a lawful consideration, based upon lawful acts. But did the lender give a lawful consideration? **To give a lawful consideration, the lender must prove that he gave the borrower lawful money such as coins or currency. Failing that, he can have no claim for relief in a court at law against the borrower as the lender's actions were ultra vires or void from the beginning of the transaction.**

It can be argued that "bad" cheques or "credit" loans that pass as money are valuable; but so are counterfeit coins and currency that pass as money. It seems unconscionable that a bank would ask homeowners to put up a homestead as collateral for a "credit loan" that the bank created out of thin air. Would this court of law or equity allow a counterfeiter to foreclose against a person's home because the borrower was late in payments on an unlawful loan of counterfeit money? Were the court to do so, it would be contrary to all principles of law.

The question of valuable consideration in the case at bar, does not depend on any value imparted by the lender, but the false confidence instilled in the "bad" cheque or "credit" loan by the lender. In a court at law or equity, the lender has no claim for relief. The argument that because the borrower received property for the lender's "bad" cheque or "credit" loan gives the lender a claim for relief is not valid, unless the lender can prove that he gave lawful value. The seller in some cases who may be holding the "bad" cheque or "Credit" loan has a claim for relief against the lender or the borrower or both, but the lender has no such claim.

**Borrower Relief**

Since we have established that the lender of unlawful or counterfeit money has no claim for relief under a void contract, the last question should be, does the borrower have a claim for relief against the lender?

First, if it is established that the borrower has made no payments to the lender, then the borrower has no claim for relief 'against the lender for money damages. But the borrower has a claim for relief to void the debt he owes the lender for notes or obligations unlawfully created by an ultra vires contract for lending "credit" money.

The borrower, the Cour_ _ave long held, has a claim for relief aga__st the lender to have the note, security agreement, _ mortgage note the borrower signed dec_ _d null and void.

The borrower may also have claims for relief for breach of contract by the lender for not lending "lawful money" and for "usury" for charging an interest rate several times greater than the amount agreed to in the contract for any lawful money actually risked by the lender. For example, if on a $100,000 loan it can be established that the lender actually risked only $5,000 (5% Federal Reserve ratio) with a contract interest rate of 10%, the lender has then loaned $95,000 of "credit" and $5,000 of "lawful money". However, while charging 10% interest ($10,000) on the entire $100,000. The true interest rate on the $5,000 of "lawful money" actually risked by the lender is 200% which violates Usury laws of this state. If no "lawful money" was loaned, then the interest rate is an infinite percentage. Such techniques the bankers say were learned from the trade secrets of the Goldsmiths.

The Courts have repeatedly ruled that such contracts with borrowers are wholly void from the beginning of the transaction, because banks are not granted powers to enter into such contracts by either state or national charters.


**Additional Borrower Relief**

In Federal District Court the borrower may have additional claims for relief under "Civil RICO" Federal Racketeering laws (18 U.S.C. §1964). The lender may have established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the lender may be in violation of 18 U.S.C. §§§§1341, 1343, 1961 and 1962. The borrower may have other claims for relief if he can prove there was or is a conspiracy to deprive him of property without due process of law under. (42 U.S.C.§§§1983 (Constitutional Injury), 1985(Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong), Under 18 U.S.C.A.§ 241 (Conspiracy) violators, "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both."

In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate." The Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan

sharking" operation. The debt inc̶l̶u̶d̶ed the fact that exaction of a usurious inte̶r̶e̶s̶t rate rendered the

debt unlawful and that is all tha̶t̶ ̶i̶s̶ necessary to support the Civil RICO actio̶n̶.  ̶D̶urante Bros. & Sons,

Inc. v. Flushing Nat 'l Bank. 755 F2d 239, Cert. denied, 473 US 906 (1985).

The Supreme Court found that the Plaintiff in a civil RICO action, need establish only a criminal

"violation" and not a criminal conviction. Further, the Court held that the Defendant need only have

caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a

"pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an

organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of

special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires.

The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the

congressional purpose as broadly formulated in the Statute. Sedima, SPRL v. Imrex Co., 473 US 479

(1985).

## CASE CITES IN SUPPORT

## ULTRA VIRES CONTRACTS

1. "A contract is ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it. The courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm the unlawful contract." *Pullman v. Central Transp. Co.*, 139 U.S. 62, 11 S.Ct. 478, 35 L.Ed. 55

2. "When a contract is once declared ultra vires, the fact that it is executed does not validate it, nor can it be ratified, so as to make it the basis of suit or action, nor does the doctrine of estoppel apply." *F&PR v. Richmond*, 133 SE 898; 151 Va. 195.

3. "A national bank . . . cannot lend its credit to another by becoming surety, indorser or guarantor for him, such an act is ultra vires . . ." *Merchants Bank v. Baird*, 160 F 642.

## LOAN OF CREDIT

4. "In the federal courts, it is well established that a national bank has not power to lend its credit to another by becoming surety, endorser, or guarantor for him." *Farmers and Miners Bank v. Bluefield Nat'l Bank*, 11 F.2d 83, 271 U.S. 669.

5. "A national bank has no power to lend its credit to any person or corporation." *Bowen v. Needles Nat. Bank*, 94 F. 92.' ' CCA 553, certiorari denied In 20 S.C '24, 176 US 682, 44 L.Ed 637.

6. "Mr. Justice Marshall said: 'The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often . . .'" *Zinc Carbonate Co. v. First National Bank,* 103 Wis. 125, 79 NW 229, *American Express Co. v. Citizens State Bank,* 194 NW 430.

7. "A bank may not lend its credit to another, even though such a transaction turns out to have been of benefit to the bank, and in support of this a list of cases might be cited, which would look like a catalog of ships." *Norton Grocery Co. v. Peoples Nat. Bank*, 144 SE 505, 151 Va 195.

8. "It has been settled beyond controversy that a national bank, under federal law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires. . ." *Howard & Foster Co. v. Citizens Nat'l Bank of Union*, 133 SC 202, 130 SE 759 (1926).

9. ". . . checks, drafts, money orders and bank notes are not lawful money of the United States . . ." *State v. Neilon*, 73 Pac. 324, 43 Ore. 168.

10. "Neither, as included in its powers, nor incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics . . . Indeed, lending credit is the exact opposite of lending money which is the real business of a bank, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another." 1 Morse, *Banks and Banking,* 5th Ed. Sec. 65; Magee, *Banks and Banking,* 3rd Ed. Sec. 248." *American Express Co. v. Citizens State Bank,* 194 NW 429.

11. "It is not within those statutory powers for a national bank, even though solvent, to lend its credit to another in any of the various ways in which that might be done." *Federal Intermediate Credit Bank v. L. Herrison,* 33 F.2d 841, 842 (1929).

12. "There is no doubt but what the law is that a national bank cannot lend its credit or become an accommodation endorser." *National Bank of Commerce v. Atkinson,* 56 F. 471.

13. "A bank can lend its money, but not its credit." *First Nat'l Bank of Tallapoosa v. Monroe,* 135 Ga 614, 69 F. 1124, 32 LRA (NS) 550.

14. ". . . the bank is allowed to lend money upon personal security, but it must be money that it loans, not its credit." *Sellgman v. Charlottesville Nat. Bank,* 3 Hughes 647, Fed. Case No. 12, 642, 1039.

## LOANS OF MONEY

15. "A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement express or implied, to repay the sum with or without interest." *Parsons v. Fox,* 179 Ga 605, 176 SE 644. Also see *Kirkland v. Bailey,* 155 SE 2d 701, and *United States v. Neifert White Co.,* 247 Fed.Supp. 878, 879. "The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange. . ." e.v. *Railey* 280 Ky 319, 133 SW2d 75.

## PROMISE TO PAY NOT EQUIVALENT TO PAYMENT

16. "A promise to pay cannot, y argument, however ingenious, be ma. .ne equivalent of actual payment . . ." *Christensen v. Beebe,* 91 P 133, 32 Utah 406.

17. "A check is merely an order on a bank to pay money." *Young v. Hembree,* 73 P2d 393.

## HOLDER IN DUE COURSE

18. **"A bank is not the holder in due course upon merely crediting the depositor's account."** *Bankers Trust v. Nagler,* 229 NYS2d 142, 143.

## FRAUD AND MISREPRESENTATION

19. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." *Barnsdall Refining Corp. v. Bimarn Wood Oil Co.,* 92 F.2d S17.

20. "Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." *Leonard v. Springer,* 197 Ill 532, 64 NE 301.

21. "It is not necessary for recision of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations even innocently to retain the fruits of a bargain induced by such representations." *Whipp v. Iverson,* 43 Wis.2d 166.

## CONSIDERATION

22. "If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise, one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." *Menominee River Co. v. Augustus Spies L&C Co.,* 147 Wis 559, 572; 132 NW 1122.

"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Agency v. Guardian Mut. Savings Bank,* 227 Wis. 550, 279 NW 83.

## RICO

23. In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate," the Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. *Durante Bros. & Sons, Inc. v. Flushing Nat. Bank,* 755 F.2d 239, cert. denied, 473 US 906 (1985).

24. The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not

demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffere' ome type of special Racketeering injur; ') that the Plaintiff must show is what the Statute spec..ically requires. The RICO Statute and tl.. civil remedies for its violation are to be liberally construed to effect the Congressional purpose as broadly formulated in the statute. *Sedima, SPRL v. Imrex Co.,* 473 US 479 (1985)

## FEDERAL RESERVE BANK

25. "Each Federal Reserve bank is a separate corporation owned by commercial banks in its region . . ." *Lewis v. United States,* 680 F.2d 1239 (1982).

Plaintiff has 20 calendar days to respond effective date of filing,

## Certificate of Mailing

I, Sharon E. Angulo, certify that on day 30, September 2008, I mailed a true and correct copy of

the above and foregoing claim of contract fraud to:


Dr. Josef Ackerman, Chairman
**Deutsche Bank Trust Company Americas**
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5960

Dr. Hugo Banzinger, Chief Risk Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5977

Stefan Krause, Chief Financial Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5991

Herman-Josef Lamberti, Chief Operating Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 6004

Angelo Mozilo, Financial Director/ CEO
**Countrywide Financial Corporate Headquarters**
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6011

David Sambul, President.
Countrywide Financial Corporate Headquarters
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6028

S. Dean Lesiak
Managing Director & Chief Compliance
Officer.
Countrywide Financial Corporate Headquarters
4500 Park Granada
Calabasas Ca 91302
USPS Certified Mail #7007 3020 0002 0195 6073

<u>VERIFICATION</u>

I verify that the statements made in the foregoing document are true and correct to the best of my knowledge. I understand that false statements made are subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

Prepared and Respectfully Submitted by,

Sharon E. Angulo,

Authorized Representative / Attorney-In-Fact For:

SHARON E. ANGULO

20304 SW 82 PLACE

Miami, Fl. 33189

(305) 323-6537

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT, IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION
COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA
Case # 08-57969 CA 01 (09)

SHARON E ANGULO                                              )

    Plaintiff                                          )        CIVIL ACTION SUMMONS

    VS                                                 )        SUIT FOR CONTRACT FRAUD

DEUTSCHE BANK NATIONAL Trust Company On behalf )        PLAINTIFFS
Of GS Mortgage Securities Corp.,                             )
GSAA Home Equity Trust 2005-10 assett                        )        MEMORANDUM OF LAW
Backed certificates series 2005-10, Dr. JOSEF ACKERMAN,      )
Dr. HUGO BANZINGER, ANTHONY DIIORIO,                         )        IN SUPPORT OF BRIEF
STEFAN KRAUSE,HERMAN-JOSET LAMBERTI,                         )

    &                                                  )

COUNTRYWIDE FINANCIAL CORPORATE HEADQUARTERS)
a/k/a COUNTRYWIDE MORTGAGE SERVICES., a/k/a                   )
COUNTRYWIDE HOME LOANS, DAVID SAMBUL,                         )
ERIC SIERACKI, ANGELO MOZILO, S. DEAN LESIAK                 )
                                                             )
_____Defendants_____)

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint/amended
complaint or petition on defendant(s):

ANTHONY DIIORIO, Chief Financial Officer
DEUTSCHE BANK NATIONAL TRUST
60 Wall Street
New York, NY 10005-2836

    A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to
file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you; your
written response, including the case number given above and the names of the parties, must be filed if you want the
court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages,
money, and property may thereafter be taken without further warning from the court.  There are other legal
requirements.  You may want to call an attorney right away.  If you do not know an attorney you may call an
attorney referral service or legal aid office (listed in the phone book)

    If you choose to file a written response yourself, at the same time you file your written response to the
court, you must also mail or take a carbon copy or photocopy of your written response to the 'plaintiff' listed below:

SHARON E ANGULO
20304 SW 82 PLACE
MIAMI, FL. 33189

CLERK OF THE CIRCUIT COURT

DATED: _____        BY: _____
                                           DEPUTY CLERK OF COURT

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días contados a partir del recibo de esta notificación para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número de caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/ Plantiff Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont été entreprises contre vous. Vous avez 20 jours consecutifs à partir de la date de l'assignation de cette citation pour déposer une response écrite à la plainte ci-jointe auprès de ce tribunal. Un simple coup de téléphone est insuffisant pur vous proteger. Vous êtes obligé de déposer votre response écrite, avec mention du numero de dossier ci-dessus et du nom des parties nommées ici, si vouse souhaitez que le tribunal entende votre cause. Si vous ne déposez pas votre response écrite dans le délai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent être saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaissez pas d'avocate, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant à l'annuaire de telephones)

This notice is provided pursuant to Administrative Order No.2.031-9/96

## SPANISH

De acuerdo con el Acta de los Americanos con Impedimentos, aquellas personas que necesiten de algún servicio especial para participar en este proceso o tener acceso a servicios, programas ó actividades de La Corte deberán, dentro de un período razonable antes de cualquier proceso o de tener necesidad de acceso a servicios, programas ó actividades, ponerse en contacto con La Oficina Administrativa de la Corte, que está situada en el MIAMI-DADE, ó a los telefonos 305-275-1155, ó 1-800-955-8771 (TDD) y Si usa el servicio Florida Relay Service al 1-800-955-8770 (V).

## CREOLE

D'apre' akò ki té fèt avèk Akt Pou Amerikin ki Infim, tout moun ki genyen yon bezwen éspesyal pou akomodasyon pou yo patisipé nan pwosé obyen pou gin aks. Sèvis, pwogram ak aktivité tibinal-la, dwé nan yon tan rézonab anvan okin pwosé oubyen bezwen aksè sevis, pwogram oubyen aktivité fèt, yo dwé konta Ofis Tribinal-la ki nan MIAMI-DADE, niméro téléfonn-nan sé 305-275-1155, ou byen 1-800-955-8771 (TDD) ou byen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

## FRENCH

En accordance avec l'Acte Pour les Americains Incapacites', les personnes en besoin d'une accommodation spéciale pour participer à ces procédures, ou bien pour avoir accès au service, progamme, ou activité de la Court doivent, dans un temps raisonable, avant aucune procedures ou besoin d'accès de service, programme ou activité, contacter, l'Office Administrative de la Court, situé au numéro MIAMI-DADE, le numéro de téléphone 305-275-1155, ou 1-800-955-8771 (TDD), ou 1-800-955-8770 (V) ou par Florida Relay Service.

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION<br>☐ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☑ OTHER | CIVIL COVER SHEET | CASE NUMBER<br>08-57969-CA-01<br>09 |
|---|---|---|

| PLAINTIFF<br>SHARON E ANGULO | VS. DEFENDANT<br>DEUTSCHE BANK NATIONAL TRUST<br>CO. ON BEHALF OF GS MORTGAGE<br>SECURITIES CORP,<br>GSAA HOME EQUITY TRUST 2005-10 ASSET<br>BACKED CERT. SERIES 2005-10,<br>ANTHONY DiTORIO | CLOCK IN<br>08 SEP 29 |
|---|---|---|

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

## TYPE OF CASE (Place an 'x' in one box only)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ☐ Simplified dissolution | ☐ Professional Malpractice | ☐ Contracts |
| ☐ Dissolution of Marriage | ☐ Products liability | ☐ Condominium |
| ☐ Support - IV-D | ☐ Auto negligence | ☑ Real property/Mortgage foreclosure |
| ☐ Support - Non IV-D | ☐ Other negligence | ☐ Eminent domain |
| ☐ UIFSA - IV-D | | ☐ Challenge to propsed Constitutional Amendment |
| ☐ UIFSA - Non IV-D | | ☐ Other |
| ☐ Domestic Violence | | |
| ☐ Other domestic relations | | |

| Is Jury Trial Demanded in Complaint ?    ☐ Yes  ☑ No | DATE:<br>SEPT. 29, 2008 |
|---|---|

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated in the attached addendum pursuant to Administrative Order.  ☐ Yes ☐ No

Signature of Attorney for party initiating action:

JUDGE:

CLK/CT 96 Rev. 10/06

Clerk's web address:  www.miami-dadeclerk.com

IN THE COURT OF MIAMI-DADE COUNTY

ELEVENTH JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE FLORIDA GENERAL JURISDICTION DIVISION

COMMONWEALTH OF OR RUPUBLIC OF: FLORIDA

CIVIL ACTION

08-57969-CA-01-09

|  |  |  |
|---|---|---|
| | ) | Case # _____ 2008 |
| Plaintiff | ) | |
| Sharon E Angulo | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Deutsche Bank National Trust Company On behalf | ) | **PLAINTIFFS** |
| Of GS Mortgage Securities Corp | ) | |
| GSAA Home Equity Trust 2005-10 assett | ) | **MEMORANDUM OF LAW** |
| Backed certificates series 2005-10 | ) | |
| | ) | **IN SUPPORT OF BRIEF** |
| | ) | |
| Dr. Josef Ackerman, Chairman, Deutsche Bank | ) | |
|       Trust Company | ) | |
| | ) | |
| Dr. Hugo Banzinger, Chief Risk Officer, | ) | |
|       Deutsche Bank Trust Company | ) | |
| | ) | |
| Anthony diIorio, Chief Financial Officer, | ) | |
|       Deutsche Bank Trust Company | ) | |

08 SEP 29 PM 2:47

Filed by Plaintiff's Request

Stefan Krause, Chief Financial Officer,                    )

    Deutsche Bank Trust Company                      )

                                                 )

Herman-Josef Lamberti, Chief Operating Officer,            )

    Deutsche Bank Trust Company                      )

                                                 )

Countrywide Mortgage Services Inc.                         )

                                                 )

David Sambul, President,                                   )

Countrywide Mortgage Services, Inc.                        )

                                                 )

Eric Sieracki, Chief Financial Officer                     )

Countrywide Mortgage Services, Inc                         )

                                                 )

Angelo Mozilo Financial Chairman, C.E.O                    )

Countrywide Mortgage Services, Inc                         )

                                                 )

S. Dean Lesiak, Managing Director                          )

  & Chief Compliance Officer                             )

Countrywide Mortgage Services, Inc                         )

                                                 )

Defendants                                                 )

## CREDIT LOANS AND VOID CONTRACTS
### PERFECT OBLIGATION AS TO A HUMAN BEING AS TO A BANK

To the Honorable Judge of Said Court:

Plaintiff, Sharon E Angulo, offers this Memorandum of law in order for the Court to advance it's

understanding of the complex legal issues, present and embodied in the Common Law, with authorities,

law and cases in support of, which will constitute the following facts:

Page 2 of 19

1.  Defendants and other privately owned banks are making loans of "credit" with the intended purpose of circulating "credit" as "money".

2.  Other financial institutions and individuals may "launder" bank credit that they receive directly or indirectly from privately owned banks.

3.  This collective activity is unconstitutional, unlawful, in violation of Common Law, U.S. Code and the principles of equity.

4.  Such activity and underlying contracts have long been held void, by State Courts, Federal Courts and the U.S. Supreme Court.

This Memorandum will demonstrate through authorities and established common law, that credit "money creation" by privately owned bank corporations is not really "money creation" at all. It is the trade specialty and artful illusion of law merchants, which use old-time trade secrets of the Goldsmiths, to entrap the borrower and unjustly enrich the lender through usury and other unlawful techniques. Issues based on law and the principles of equity, which are within the jurisdiction of this Court, will be addressed.


## HISTORY OF MONEY AND BANKING

### The Goldsmiths

In his book, *Money and Banking* (8th Edition, 1984), Professor David R. Kamerschen writes on pages 56 - 63:

> "The first bankers in the modern sense were the goldsmiths, who frequently accepted bullion and coins for storage ... One result was that the goldsmiths temporarily could lend part of the gold left with them . . . These loans of their customers' gold were soon replaced by a revolutionary technique. When people brought in gold, the goldsmiths gave them notes promising to pay that amount of gold on demand. The notes, first made payable to the order of the individual, were later changed to bearer obligations. In the previous form, a note payable to the order of Jebidiah Johnson would be paid to no one else unless Johnson had first endorsed the note ... But notes were soon being used in an unforeseen way. The note holders found that, when they wanted to buy something, they could use the note itself in payment more conveniently and let the other person go after the gold, which the person rarely did ...The specie, then tended to remain in the goldsmiths' vaults. . . . The goldsmiths

began to realize that they might profit handsomely by issuing somewhat more notes than the amount of specie they held. . . These additional notes would cost the goldsmiths nothing except the negligible cost of printing them, yet the notes provided the goldsmiths with funds to lend at interest. . . .And they were to find that the profitability of their lending operations would exceed the profit from their original trade. The goldsmiths became bankers as their interest in manufacture of gold items to sell was replaced by their concern with credit policies and lending activities . . . They discovered early that, although an unlimited note issue would be unwise, they could issue notes up to several times the amount of specie they held. The key to the whole operation lay in the public's willingness to leave gold and silver in the bank's vaults and use the bank's notes. This discovery is the basis of modern banking."

On page 74, Professor Kamerschen further explains the evolution of the credit system:

"Later the goldsmiths learned a more efficient way to put their credit money into circulation. They lent by issuing additional notes, rather than by paying out in gold. In exchange for the interest-bearing note received from their customer (in effect, the loan contract), they gave their own non-interest bearing note. Each was actually borrowing from the other ... The advantage of the later procedure of lending notes rather than gold was that . . . more notes could be issued if the gold remained in the vaults ... Thus, through the principle of bank note issuance, *banks learned to create money in the form of their own liability.*"
[Emphasis Added]

Another publication which explains modern banking as learned from the Goldsmiths is *Modern Money Mechanics* (5th edition 1992), published by the Federal Reserve Bank of Chicago which states beginning on page 3:

"It started with the goldsmiths ..." At one time, bankers were merely middlemen. They made a profit by accepting gold and coins brought to them for safekeeping and lending the gold and coins to borrowers. But the goldsmiths soon found that the receipts they issued to depositors were being used as a means of payment. 'Then, bankers discovered that they could make loans merely by giving borrowers their promises to pay, or bank notes... In this way, banks began to create money ... Demand deposits are the modern counterpart of bank notes . . . It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques, thereby printing *their own* money." [Emphasis added]

## MODERN MONEY AND BANKING

### How Banks Create Money

In the modern sense, banks create money by creating "demand deposits." Demand deposits are merely "book entries" that reflect how much lawful money the bank owes its customers. Thus, all deposits

Page 4 of 19

are called demand deposits and are the bank's liabilities. The bank's assets are the vault cash plus all the "IOUs" or promissory notes that the borrower signs when they borrow either money or credit. When a bank lends its cash (legal money), it loans its assets, but when a bank lends its "credit" it lends its liabilities. The lending of credit is, therefore, the exact opposite of the lending of cash (legal money).

At this point, we need to define the meaning of certain words like "lawful money", "legal tender", "other money" and "dollars". The terms "Money" and "Tender" had their origins in Article 1, Sec. 8 and Article 1, Sec. 10 of the *Constitution of the United States*. 12 U.S.C. §152 refers to "gold and silver coin as lawful money of the United States" and was unconstitutionally repealed in 1994 in-that Congress **can not delegate** any portion of their constitutional responsibility without Amendment. The term "legal tender" was originally cited in 31 U.S.C.A. §392 and is now re-codified in 31 U.S.C.A. §5103 which states:

> **"United States coins and currency . . . are legal tender for all debts, public charges, taxes, and dues."**

The common denominator in both "lawful money" and "legal tender money" is that the United States Government issues both.

With Bankers, however, we find that there are two forms of money - one is government-issued, and privately owned banks such as Defendant's, Deutsche Bank National Trust and Countrywide Home Loans, issue the other. As we have already discussed government issued forms of money, we must now scrutinize privately issued forms of money.

All privately issued forms of money today are based upon the liabilities of the issuer. There are three common terms used to describe this privately created money: They are "credit", "demand deposits" and "chequebook money".

In the Sixth edition of Blacks Law Dictionary, p.367 under the term "Credit" the term "Bank credit" is described as: "Money bank owes or will lend a individual or person". It is clear from this definition that "Bank credit" which is the "money bank owes" is the bank's liability. The term

"chequebook money" is described in the book "*I Bet You Thought*", published by the privately owned Federal Reserve Bank of New York, as follows:

> **"Commercial banks create chequebook money whenever they grant a loan, simply by adding deposit dollars to accounts on their books to exchange for the borrowers IOU . . . ."**

The word "deposit" and "demand deposit" both mean the same thing in bank terminology and refer to the bank's liabilities. For example, the Chicago Federal Reserves publication, "*Modern Money Mechanics*" states:

> **"Deposits are merely book entries ... Banks can build up deposits by increasing loans ... Demand deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries to the credit of borrowers which the borrowers, in turn, could 'spend' by writing cheques."**

Thus, it is demonstrated in "Modern Money Mechanics" how, under the practice of fractional reserve banking, a deposit of $5,000 in cash could result in a loan of credit/chequebook money/demand deposits of $100,000 if reserve ratios set by the Federal Reserve are 5% (instead of 10%).

In a practical application, here is how it works. If a bank has ten people who each deposit $5,000 (totaling $50,000) in cash (legal money) and the bank's reserve ratio is 5%, then the bank will lend twenty times this amount, or $1,000,000 in "credit" money. What the bank has actually done, however, is to write a cheque or loan its credit with the intended purpose of circulating credit as "money." Banks know that if all the people who receive a cheque or credit loan come to the bank and demand cash, the bank will have to close its doors because it doesn't have the cash to back up its cheque or loan. The bank's cheque or loan will, however, pass as money as long as people have confidence in the illusion and don't demand cash. Panics are created when people line up at the bank and demand cash (legal money), causing banks to fold as history records in several time periods, the most recent in this country was the panic of 1933.

The process of passing cheques or credit as money is done quite simply. A deposit of $5,000 in cash by one person results in a loan of $100,000 to another person at 5% reserves. The person receiving

the cheque or loan of credit for $100.000 usually deposits it in the same bank or another bank in the Federal Reserve System. The cheque or loan is sent to the bookkeeping department of the lending bank where a book entry of $100,000 is credited to the borrower's account. The lending bank's cheque that created the borrower's loan is then stamped "Paid" when the account of the borrower is credited a "dollar" amount. The borrower may then "spend" these book entries (demand deposits) by writing cheques to others, who in turn deposit their cheques and have book entries transferred to their account from the borrower's chequeing account.

However, two highly questionable and unlawful acts have now occurred. The first was when the bank wrote the cheque or made the loan with insufficient funds to back them up. The second is when the bank stamps its own "Not Sufficient Funds" cheque "paid" or posts a loan by merely crediting the borrower's account with book entries the bank calls "dollars." Ironically, the cheque or loan seems good and passes as money -- unless an emergency occurs via demands for cash - or a Court challenge -- and the artful, illusion bubble, bursts.


**Different Kinds of Money**

The book, *"I Bet You Thought"*, published by the Federal Reserve Bank of New York, states:

> **"Money is any generally accepted medium of exchange, not simply coin and currency.
> Money *doesn't* have to be intrinsically valuable , *be issued by a government* or be in any
> special form."** [Emphasis added]

Thus we see that privately issued forms of money only require public confidence in order to pass as money. Counterfeit money also passes as money as long as nobody discovers it's counterfeit. Like wise, "bad" cheques and "credit" loans pass as money so long as no one finds out they are unlawful. Yet, once the fraud is discovered, the values of such "bank money" like bad cheque's ceases to exist. There are, therefore, two kinds of money -- government issued legal money and privately issued unlawful money.

**Different Kinds of Dollars**

The dollar once represented something intrinsically valuable made from gold or silver. For example, in 1792, Congress defined the silver dollar as a silver coin containing 371.25 grains of pure silver. The legal dollar is now known as "United States coins and currency." However, the Banker's dollar has become a unit of measure of a different kind of money. Therefore, with Bankers there is a "dollar" of coins and a dollar of cash (legal money), a "dollar" of debt, a "dollar" of credit, a "dollar" of chequebook money or a "dollar" of cheques. When one refers to a dollar spent or a dollar loaned, he should now indicate what kind of "dollar" he is talking about, since Bankers have created so many different kinds.

A dollar of bank "credit money" is the exact opposite of a dollar of "legal money". The former is a liability while the latter is an asset. Thus, it can be seen from the earlier statement quoted from *I Bet You Thought*, that money can be privately issued as: "Money doesn't have to ... be issued by a government or be in any special form." It should be carefully noted that banks that issue and lend privately created money demand to be paid with government issued money. However, payment in like kind under natural equity would seem to indicate that a debt created by a loan of privately created money can be paid with other privately created money, without regard for "any special form" as there are no statutory laws to dictate how either private citizens or banks may create money.

**By What Authority?**

By what authority do state and national banks, as privately owned corporations, create money by lending their credit -- or more simply put - by writing and passing "bad" cheques and "credit" loans as "money"? Nowhere can a law be found that gives banks the authority to create money by lending their liabilities.

Therefore, the next question is, if banks are creating money by passing bad cheques and lending their credit, where is their authority to do so? From their literature, banks claim these techniques were learned from the trade secrets of the Goldsmiths. It is evident, however, that money creation by private

banks is not the result of powers conferred upon them by government, but rather the artful use of long held "trade secrets." Thus, unlawful money creation is not being done by banks as corporations, but unlawfully by bankers.

Article I, Section 10, para. 1 of the *Constitution of the United States of America* specifically states that no state shall "**... coin money, emit bills of credit, make any Thing but gold and silver coin a Tender in Payment of Debts, pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligations of Contracts . . .**"[Emphasis added]  The states, which grant the Charters of state banks also, prohibit the emitting of Bills of credit by not granting such authority in bank charters.

It is obvious that "We the people" never delegated to Congress, state government, or agencies of the state, the power to create and issue money in the form of cheques, credit, or other "bills of credit." The Federal Government today does not authorize banks to emit, write, create, issue and pass cheques and credit as money. But banks do, and get away with it! Banks call their privately created money nice sounding names, like "credit", "demand deposits", or "Chequebook money". However, the true nature of "credit money" and "cheques" does not change regardless of the poetic terminology used to describe them. Such money in common use by privately owned banks is illegal under Art. 1, Sec. 10, para. 1 of the Constitution of the United States of America, as well as unlawful under the laws of the United States and of this State.

## Void "ULTRA VIRES" Contracts

*Black's Law Dictionary* defines the Latin term "extra vires" to mean beyond powers. *Black's Law Dictionary* explains the term "ultra vires" embraces "[a]n act performed without any authority to act on subject. *Haslund v. City of Seattle,* 86 Wash.2d 607, 547 P.2d 1221, 1230. Acts beyond the scope of the powers of a corporation, as defined by its charter or laws of state of incorporation. *State ex rel. v. Holston Trust Col.* 168 Tenn. 546, 79 S.W.2d 1012, 1016. The term has a broad application and includes not only acts prohibited by the charter, but acts which are in excess of powers granted and not prohibited, and

generally applied either when a corporation has no power whatever to do an act, or when the corporation has the power, but exercises it irregularly. *People ex rel. Barrett v. Bank of Peoria,* 295 Ill.App. 543, 15 N.E.2d 333, 335. Act is ultra vires when corporation is without authority to perform it under any circumstances or for any purpose. By doctrine of ultra vires a contract made by a corporation beyond the scope of its corporate powers is unlawful. *Community Federal Sav. & Loan Ass'n of Independence, Mo. v. Fields, C.C.A., Mo.,* 128 F.2d 705, 708." *Black's* 6th Edition, p. 1522.

The courts have long held that when a corporation executes a contract beyond the scope of its charter or granted corporate powers, the contract is void or "ultra vires".

1. In *Central Transp. Co. v. Pullman,* 139 U.S. 60, 11 S. Ct. 478, 35 L. Ed. 55, the court said: "A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

2. "When a contract is once declared ultra vires, the fact that it is executed · does not validate it, nor can it be ratified, so as to make it the basis of suitor action, nor does the doctrine of estoppel apply." *F& PR v. Richmond,* 133 SE 898; 151 Va 195.

3. "A national bank ... cannot lend its credit to another by becoming surety, indorser, or guarantor for him, such an act ; is ultra vires . . ." *Merchants' Bank v. Baird* 160 F 642. (Additional cases are cited as footnotes at the end of this Memorandum.)

**The Question of Lawful Consideration**

The issue of whether the lender who writes and passes a "bad" cheque or makes a "credit" loan has a claim for relief against the borrower is easy to answer, providing the lender can prove that he gave a lawful consideration, based upon lawful acts. But did the lender give a lawful consideration? **To give a lawful consideration, the lender must prove that he gave the borrower lawful money such as coins or currency. Failing that, he can have no claim for relief in a court at law against the borrower as the lender's actions were ultra vires or void from the beginning of the transaction.**

It can be argued that "bad" cheques or "credit" loans that pass as money are valuable; but so are counterfeit coins and currency that pass as money. It seems unconscionable that a bank would ask homeowners to put up a homestead as collateral for a "credit loan" that the bank created out of thin air. Would this court of law or equity allow a counterfeiter to foreclose against a person's home because the borrower was late in payments on an unlawful loan of counterfeit money? Were the court to do so, it would be contrary to all principles of law.

The question of valuable consideration in the case at bar, does not depend on any value imparted by the lender, but the false confidence instilled in the "bad" cheque or "credit" loan by the lender. In a court at law or equity, the lender has no claim for relief. The argument that because the borrower received property for the lender's "bad" cheque or "credit" loan gives the lender a claim for relief is not valid, unless the lender can prove that he gave lawful value. The seller in some cases who may be holding the "bad" cheque or "Credit" loan has a claim for relief against the lender or the borrower or both, but the lender has no such claim.

**Borrower Relief**

Since we have established that the lender of unlawful or counterfeit money has no claim for relief under a void contract, the last question should be, does the borrower have a claim for relief against the lender?

First, if it is established that the borrower has made no payments to the lender, then the borrower has no claim for relief against the lender for money damages. But the borrower has a claim for relief to void the debt he owes the lender for notes or obligations unlawfully created by an ultra vires contract for lending "credit" money.

**The borrower, the Courts have long held, has a claim for relief against the lender to have the note, security agreement, or mortgage note the borrower signed declared null and void.**

The borrower may also have claims for relief for breach of contract by the lender for not lending "lawful money" and for "usury" for charging an interest rate several times greater than the amount agreed to in the contract for any lawful money actually risked by the lender. For example, if on a $100,000 loan it can be established that the lender actually risked only $5,000 (5% Federal Reserve ratio) with a contract interest rate of 10%, the lender has then loaned $95,000 of "credit" and $5,000 of "lawful money". However, while charging 10% interest ($10,000) on the entire $100,000. The true interest rate on the $5,000 of "lawful money" actually risked by the lender is 200% which violates Usury laws of this state. If no "lawful money" was loaned, then the interest rate is an infinite percentage. Such techniques the bankers say were learned from the trade secrets of the Goldsmiths.

The Courts have repeatedly ruled that such contracts with borrowers are wholly void from the beginning of the transaction, because banks are not granted powers to enter into such contracts by either state or national charters.

## Additional Borrower Relief

In Federal District Court the borrower may have additional claims for relief under "Civil RICO" Federal Racketeering laws (18 U.S.C. §1964). The lender may have established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the lender may be in violation of 18 U.S.C. §§§1341, 1343, 1961 and 1962. The borrower may have other claims for relief if he can prove there was or is a conspiracy to deprive him of property without due process of

law under. (42 U.S.C.§§§1983 (Constitutional Injury), 1985(Conspiracy) and 1986 ("Knowledge" and

"Neglect to Prevent" a U.S. Constitutional Wrong), Under 18 U.S.C.A.§ 241 (Conspiracy) violators,

"shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both."

     In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful

debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the

RICO Statute, "twice the enforceable rate." The Court found no reason to impose a requirement that the

Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan

sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the

debt unlawful and that is all that is necessary to support the Civil RICO action. Durante Bros. & Sons,

Inc. v. Flushing Nat 'l Bank. 755 F2d 239, Cert. denied, 473 US 906 (1985).

     The Supreme Court found that the Plaintiff in a civil RICO action, need establish only a criminal

"violation" and not a criminal conviction. Further, the Court held that the Defendant need only have

caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a

"pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an

organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of

special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires.

The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the

congressional purpose as broadly formulated in the Statute. Sedima, SPRL v. Imrex Co., 473 US 479

(1985).

## CASE CITES IN SUPPORT

## ULTRA VIRES CONTRACTS

1. "A contract is ultra vires being unlawful and void, not because it is in itself immoral, but
because the corporation, by the law of its creation, is incapable of making it. The courts, while
refusing to maintain any action upon the unlawful contract, have always striven to do justice
between the parties, so far as could be done consistently with adherence to law, by permitting
property or money, parted with on the faith of the unlawful contract, to be recovered back, or
compensation to be made for it. In such case, however, the action is not maintained upon the
unlawful contract, nor according to its terms; but on an implied contract of the defendant to

return, or failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm the unlawful contract." *Pullman v. Central Transp. Co.*, 139 U.S. 62, 11 S.Ct. 478, 35 L.Ed. 55

2. "When a contract is once declared ultra vires, the fact that it is executed does not validate it, nor can it be ratified, so as to make it the basis of suit or action, nor does the doctrine of estoppel apply." *F&PR v. Richmond*, 133 SE 898; 151 Va. 195.

3. "A national bank . . . cannot lend its credit to another by becoming surety, indorser or guarantor for him, such an act is ultra vires . . ." *Merchants Bank v. Baird*, 160 F 642.

## LOAN OF CREDIT

4. "In the federal courts, it is well established that a national bank has not power to lend its credit to another by becoming surety, endorser, or guarantor for him." *Farmers and Miners Bank v. Bluefield Nat'l Bank*, 11 F.2d 83, 271 U.S. 669.

5. "A national bank has no power to lend its credit to any person or corporation." *Bowen v. Needles Nat. Bank*, 94 F. 925; 36 CCA 553, certiorari denied In 20 S.Ct. 1024, 176 US 682, 44 L.Ed 637.

6. "Mr. Justice Marshall said: 'The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often . . .'" *Zinc Carbonate Co. v. First National Bank*, 103 Wis. 125, 79 NW 229, *American Express Co. v. Citizens State Bank*, 194 NW 430.

7. "A bank may not lend its credit to another, even though such a transaction turns out to have been of benefit to the bank, and in support of this a list of cases might be cited, which would look like a catalog of ships." *Norton Grocery Co. v. Peoples Nat. Bank*, 144 SE 505, 151 Va 195.

8. "It has been settled beyond controversy that a national bank, under federal law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires. . ." *Howard & Foster Co. v. Citizens Nat'l Bank of Union*, 133 SC 202, 130 SE 759 (1926).

9. ". . . checks, drafts, money orders and bank notes are not lawful money of the United States . . ." *State v. Neilon*, 73 Pac. 324, 43 Ore. 168.

10. "Neither, as included in its powers, nor incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics . . . Indeed, lending credit is the exact opposite of lending money which is the real business of a bank, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another." I Morse, *Banks and Banking*, 5th Ed. Sec. 65; Magee, *Banks and Banking*, 3rd Ed. Sec. 248." *American Express Co. v. Citizens State Bank*, 194 NW 429.

11. "It is not within those statutory powers for a national bank, even though solvent, to lend its credit to another in any of the various ways in which that might be done." *Federal Intermediate Credit Bank v. L. Herrison.* 33 F.2d 841, 842 (1929).

12. "There is no doubt but what the law is that a national bank cannot lend its credit or become an accommodation endorser." *National Bank of Commerce v. Atkinson,* 56 F. 471.

13. "A bank can lend its money, but not its credit." *First Nat'l Bank of Tallapoosa v. Monroe,* 135 Ga 614, 69 F. 1124, 32 LRA (NS) 550.

14. ". . . the bank is allowed to lend money upon personal security, but it must be money that it loans, not its credit." *Sellgman v. Charlottesville Nat. Bank,* 3 Hughes 647, Fed. Case No. 12, 642, 1039.

## LOANS OF MONEY

15. "A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement express or implied, to repay the sum with or without interest." *Parsons v. Fox,*179 Ga 605, 176 SE 644. Also see Kirkland *v. Bailey,* 155 SE 2d 701, and *United States v. Neifert White Co.,* 247 Fed.Supp. 878, 879. "The word 'money' in its usual and ordinary acceptation means gold, silver, or paper money used as a circulating medium of exchange. . ." e.v. *Railey* 280 Ky 319, 133 SW2d 75.

## PROMISE TO PAY NOT EQUIVALENT TO PAYMENT

16. "A promise to pay cannot, by argument, however ingenious, be made the equivalent of actual payment . . ." *Christensen v. Beebe,* 91 P 133, 32 Utah 406.

17. "A check is merely an order on a bank to pay money." *Young v. Hembree,* 73 P2d 393.

## HOLDER IN DUE COURSE

18. **"A bank is not the holder in due course upon merely crediting the depositor's account."** *Bankers Trust v. Nagler,* **229 NYS2d 142, 143.**

## FRAUD AND MISREPRESENTATION

19. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." *Barnsdall Refining Corp. v. Bimarn Wood Oil Co.,* 92 F.2d S17.

20. "Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." *Leonard v. Springer,* 197 Ill 532, 64 NE 301.

21. "It is not necessary for recision of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations even

innocently to retain the fruits of a bargain induced by such representations." *Whipp v. Iverson*, 43 Wis.2d 166.

## CONSIDERATION

22. "If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise, one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." *Menominee River Co. v. Augustus Spies L&C Co.*, 147 Wis 559, 572; 132 NW 1122.

"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." *Guardian Agency v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 NW 83.

## RICO

23. In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate," the Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation. The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. *Durante Bros. & Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, cert. denied, 473 US 906 (1985).

24. The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the Congressional purpose as broadly formulated in the statute. *Sedima, SPRL v. Imrex Co.*, 473 US 479 (1985)

## FEDERAL RESERVE BANK

25. "Each Federal Reserve bank is a separate corporation owned by commercial banks in its region . . ." *Lewis v. United States*, 680 F.2d 1239 (1982).

Plaintiff has 20 calendar days to respond effective date of filing,

Certificate of Mailing

I, Sharon E Angulo, certify that on September 29th, 2008, I mailed a true and correct copy of the above and foregoing claim of contract fraud to:

Dr. Josef Ackerman, Chairman
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5960

Dr. Hugo Banzinger, Chief Risk Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5977

Anthony DiIorio, Chief Financial Officer
Deutsche Bank Trust Company Americas
60 Wall Street
New York, NY 10005-2836
USPS Certified Mail # 7007 3020 0002 0195 5984

Stefan Krause, Chief Financial Officer

Deutsche Bank Trust Company Americas

60 Wall Street

New York, NY 10005-2836

USPS Certified Mail # 7007 3020 0002 0195 5991

Herman-Josef Lamberti, Chief Operating Officer

Deutsche Bank Trust Company Americas

60 Wall Street

New York, NY 10005-2836

USPS Certified Mail # 7007 3020 0002 0195 6004

Angelo Mozilo, Financial Director/ CEO

Countrywide Financial Corporate Headquarters

4500 Park Granada

Calabasas Ca 91302

USPS Certified Mail #7007 3020 0002 0195 6011

David Sambul, President.

Countrywide Financial Corporate Headquarters

4500 Park Granada

Calabasas Ca 91302

USPS Certified Mail #7007 3020 0002 0195 6028

Eric Sieracki, CFO.

Countrywide Financial Corporate Headquarters

4500 Park Granada

Calabasas Ca 91302

USPS Certified Mail #7007 3020 0002 0195 6035

S. Dean Lesiak

Managing Director & Chief Compliance

Officer.

Countrywide Financial Corporate Headquarters

4500 Park Granada

Calabasas Ca 91302

USPS Certified Mail #7007 3020 0002 0195 6073


VERIFICATION


I verify that the statements made in the foregoing document are true and correct. I

understand that false statements made are subject to the penalties of 18 Pa. C.S. 4904, relating to

unsworn falsification to authorities.

Prepared and Respectfully Submitted by,

Sharon E Angulo

Secured Party Creditor.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO:    0 8 - 5 7 9 7 9  CA 31

MICHAEL J. MALICK,

      Plaintiff,

vs.

BAYVIEW CENTER FOR MENTAL HEALTH
INC., a Florida corporation,

      Defendant.

_____/

## CIVIL COVER SHEET

| II. | TYPE OF CASE | (Place an x in one box only. If the case fits more than one type of case, select the most definitive.) |
| --- | --- | --- |

| Domestic Relations | Torts | Other Civil |
| --- | --- | --- |
| ☐ Simplified dissolution<br>☐ Dissolution<br>☐ Support -- IV-D<br>☐ Support -- Non IV-D<br>☐ URESA -- IV-D<br>☐ URESA -- Non IV-D<br>☐ Domestic violence<br>☐ Other domestic relations | ☐ Professional Malpractice<br>☐ Products liability<br>   Auto negligence<br>☑ Other negligence | ☐ Contracts<br>☐ Condominium<br>☐ Real property/<br>   Mortgage foreclosure<br>☐ Eminent domain<br>☐ Other |

III.   **Is Jury Trial Demanded in Complaint?**

      ___x_   YES

      _____   NO

DATE_September 29, 2008_      SIGNATURE OF ATTORNEY FOR PARTY INITIATING ACTION:

**PAPY, WEISSENBORN, VRASPIR & PUGA, P.A.**
Counsel for Plaintiffs      By: _Jonathan Weiss, for_
3001 Ponce de Leon Blvd., Suite 214
Coral Gables, Florida 33134      Charles C. Papy, Jr. , ESQUIRE
Tel: (305) 446-5100      Florida Bar No.  061053
Fax: (305) 445-6793

PAPY & WEISSENBORN, P.A.    3001 Ponce de Leon Blvd., Suite 214, Coral Gables, FL 33134 (305) 446-5100

IN THE CIRCUIT COURT OF THE 11TH JUDICAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

MICHAEL J. MALICK,

      Plaintiff,

      CASE NO. 0 8 - 5 7 9 7 9 CA 3 1

vs.

BAYVIEW CENTER FOR MENTAL HEALTH,
INC., a Florida corporation,

      Defendant.

_____/

## COMPLAINT AGAINST BAYVIEW CENTER
## FOR MENTAL HEALTH, INC.

COMES NOW, the Plaintiff, MICHAEL J. MALICK, by and through his undersigned attorney, and files this Complaint against Defendant, BAYVIEW CENTER FOR MENTAL HEALTH, INC. ("BAYVIEW CENTER"), and states as follows:

### GENERAL ALLEGATIONS

1)     At all times material hereto, MICHAEL MALICK was living in Miami-Dade County at 11702 NE 7th Ave., Biscayne Park, FL, 33161.

2)     Defendant, BAYVIEW CENTER, is a Florida corporation registered in the state of Florida and having its principal place of business in Miami-Dade County, Florida.

3)     Venue is proper in Miami-Dade County, Florida, because the subject Defendant is located in Miami-Dade County, Florida, and the causes of action sued upon herein arose in Miami-Dade County.

*I:\Jonathan Weiss\Michael Malick Complaint.doc*

4)      This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00).

5)      MICHAEL MALICK has been clinically diagnosed with schizoaffective disorder for over twenty-five years. After several psychotic breakdowns, he became a client/patient of BAYVIEW CENTER on or about 2002.

6)      While living at Oak Grove Apartments, MICHAEL MALICK also received psychosocial support and services at the Focus House, which is another one of BAYVIEW CENTER's facilities located at 1585 NE 123rd St., North Miami, Florida 33161.

7)      BAYVIEW CENTER provides transportation services for its residents during certain times of the week and for special events. Due to their individual illnesses, residents of BAYVIEW CENTER's supported housing facility rely on this transportation – large white vans that can accommodate many passengers – as a means of getting around during those specified times of the week.

8)      On or about February 16, 2008, BAYVIEW CENTER hosted a Valentine's Day party at the Focus House for its residents. BAYVIEW CENTER undertook to provide transportation to its clients from Oak Grove Apartments to Focus House, and back. MICHAEL MALICK relied upon BAYVIEW CENTER's van service.

9)      On the return trip from the Focus House, at nighttime, MICHAEL MALICK stepped out of the van and fell through a rectangular metal plate that was in a defective and dangerous condition. The 18" x 12" rectangular metal plate is a step, intended to assist passengers into and out of the 10-passenger transport van. The actual step, however, was missing; the only part of the step that remained was the exterior,

2

rectangular frame.

10)     When MICHAEL MALICK stepped out of the transport van, without any warning from the driver, his leg went straight through the rectangular frame and he collapsed over the defective step. As a result, MICHAEL MALICK suffered a severe fracture to his tibia and fibula requiring emergency surgery.

## COUNT I – NEGLIGENCE

MICHAEL MALICK re-alleges paragraphs 1 through 10, and further alleges:

11)     BAYVIEW CENTER, whose purpose is to provide services and supported housing facilities to mental health patients, owed a duty to its residents to insure that its property and transportation vehicles were in safe working condition and would not result in injury to their residents while using its services.

12)     BAYVIEW CENTER, through its employees, knew or should have known of the defective and dangerous condition of the rectangular metal step but made no effort to cure the dangerous condition or to warn MICHAEL MALICK of the dangerous condition. This failure to warn of or remedy a known, existing dangerous condition that is likely to cause serious injury is a breach of BAYVIEW CENTER's duty to its residents.

13)     As a result of BAYVIEW CENTER's breach of duty in maintaining the transport van, and in failing to warn of the defective condition, MICHAEL MALICK fell through the rectangular metal frame and was severely injured.

14)     MICHAEL MALICK seeks damages for injuries suffered as a direct consequence of BAYVIEW CENTER's negligence, to include without limitation, the costs and expenses of surgery, medical visits, future medical costs and expenses,

3

rehabilitative therapy, lost wages, and pain and suffering.

WHEREFORE, Plaintiff, MICHAEL MALICK, demands judgment against BAYVIEW CENTER in an amount in excess of Fifteen Thousand dollars ($15,000.00), and for such other relief as this Court may deem proper, and demand trial by jury.

DATED: September 29, 2008.

Respectfully submitted,

**PAPY, WEISSENBORN, VRASPIR, PATERNO & PUGA, P.A.**

Attorneys for Plaintiffs
3001 Ponce De Leon Boulevard
Suite 214
Coral Gables, Florida 33134
Telephone: (305) 446-5100
Facsimile: (305) 445-6793

By: _____
        Charles C. Papy, Jr.
        FBN: 061053

4

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 08-57969-CA-01

SHARON E. ANGULO,

     Plaintiff,

vs.

COUNTRYWIDE FINANCIAL
CORPORATION, et al.,

     Defendants.
_____/

## NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT

Please take notice that defendants Deutsche Bank National Trust Company on behalf of GS Mortgage Securities Corp., GSAA Home Equity Trust 2005-10 asset backed certificates series 2005-10, Dr. Josef Ackerman, Dr. Hugo Banzinger, Anthony Diiorio, Stefan Krause, Herman-Joset Lamberti, Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, David Sambol, Eric P. Sieracki, Angelo R. Mozilo, and S. Dean Lesiak have, this 30th day of October, 2008, submitted for filing in the United States District Court for the Southern District of Florida, Miami Division, their Notice of Removal of this case, pending in the Circuit Court, in and for Miami-Dade County, Florida.  This case has now been removed to federal court.  A copy of said notice of removal is attached as EXHIBIT A.

Respectfully submitted,

for Jeffrey A. Trinz
Florida Bar No. 0265683
E-Mail: jeffrey.trinz@akerman.com
AKERMAN SENTERFITT
One Southeast Third Avenue 25th Floor

{M2743967;1}

EXHIBIT
B

Miami, Florida 33131-1714
305-374-5600 (ph)/305-374-5095 (fax)

and

William P. Heller
Florida Bar No. 987263
e-mail: william.heller@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-759-8945(ph)/954-463-2224 (fax)

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished, by First Class U.S. Mail, to: Sharon E. Angulo, 20304 SW 82nd Place, Miami FL 33189 on this 30th day of October, 2008.

_for_    Jeffrey A. Trinz, Esq.

{M2743967;1}2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 08-57969-CA-01

SHARON E. ANGULO,

    Plaintiff,

vs.

COUNTRYWIDE FINANCIAL
CORPORATION, et al.,

    Defendants.

_____/

THE ORIGINAL
FILED ON:

OCT 30 2008

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

## NOTICE OF APPEARANCE

Please take notice that Jeffrey A. Trinz, Esq., Eric S. Matthew, Esq., and William P. Heller, Esq., of the law firm of Akerman Senterfitt, hereby enter their appearance on behalf of Defendants Deutsche Bank National Trust Company on behalf of GS Mortgage Securities Corp., GSAA Home Equity Trust 2005-10 asset backed certificates series 2005-10, Dr. Josef Ackerman, Dr. Hugo Banzinger, Anthony Diiorio, Stefan Krause, Herman-Joset Lamberti, Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB,[1] David Sambol, Eric P. Sieracki, Angelo R. Mozilo, and S. Dean Lesiak, and request that they be copied on all filings relative to this lawsuit.

Respectfully submitted,

Jeffrey A. Trinz
Fla. Bar No. 0265683
Eric S. Matthew
Fla. Bar No. 0026539
**AKERMAN SENTERFITT**
One Southeast Third Avenue 25th Floor

[1] Countrywide Financial Corporation, Countrywide Home Loans, Inc and Countrywide Bank, FSB are sued herein as "Countrywide Financial Corporate Headquarters a/k/a Countrywide Mortgage Services a/k/a Countrywide Home Loans, Countrywide Bank, FSB a/k/a America's Wholesale Lender." To the extent that plaintiff has purported to name as a defendant any other Countrywide entities, those entities join in this notice.

{M2744166;1}

Case No. 08-57969 CA 01

Miami, Florida 33131-1714
E-Mail: jeffrey.trinz@akerman.com
E-Mail: eric.matthew@akerman.com
305-374-5600 (ph)/305-374-5095 (fax)

and

William P. Heller
Fla. Bar No. 987263
**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd.  Suite 1600
Fort Lauderdale, Florida 33301
E-Mail: william.heller@akerman.com
954-759-8945(ph)/954-463-2224 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished **VIA U.S. MAIL** to

Susan E. Angulo, Authorized Representative/Attorney-In-Fact for Sharon E. Angulo, 20304 SW

82 Place, Miami, Florida 33189, on this 30th, day of October, 2008.

for    Jeffrey A. Trinz

{M2744166;1}

10-30-2008  03:47PM  FROM-AKERMAN SENTERFITT                                           T-736  P.076/076  F-663

## CIV-HOEVELER

**MAGISTRATE JUDGE GARBER**

# 08 - 23032

**JS 44** (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

### I. (a) PLAINTIFFS
Sharon E. Angulo

**DEFENDANTS**
Countrywide Financial Corporation, et al.

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York, California
(IN U S PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Sharon E. Angulo, pro se
20304 SW 82nd Place
Miami, FL 33189    (305) 323-6537

Attorneys (If Known)
Jeffrey A. Trinz, Esq.; Eric S. Matthew, Esq.; William P. Heller, Esq.
1 SE 3rd Ave, 25th Floor, Miami FL 33131; (305) 374-5600

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                             and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding  ☑ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO       b) Related Cases ☑ YES ☐ NO

JUDGE Huck / O'Sullivan         DOCKET NUMBER 08-CIV-61711

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Plaintiff is suing under RICO (18 USC 1961 et seq) and Civil Rights Act (42 USC 1983)

LENGTH OF TRIAL via  5  days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $      CHECK YES only if demanded in complaint:  JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
s/ Eric S. Matthew

DATE
October 30, 2008

FOR OFFICE USE ONLY
AMOUNT 350.     RECEIPT # 98963   IFP

10/30/08

FILED BY D.C.
OCT 2008
CLERENM
U.S. DIST. CT.
S.D. FLA.
MIAMI